## QUEEN v. UNITED STATES.
### No. 6401.

United States Court of Appeals for the District of Columbia.

Argued April 1, 1935.

Decided April 29, 1935.

evidencing payment of all internal revenue taxes imposed on such spirits.

Defendant demurred to the indictment. The demurrer was overruled, and, a jury being waived, trial was had by the court.

The evidence on behalf of the United States tended to prove that defendant transported 2½ gallons of distilled spirits from a dwelling house in the District of Columbia to an automobile in the adjacent highway, and thence in the automobile to a point two blocks away, where the automobile was stopped, the distilled spirits seized, and the defendant arrested. As alleged in the indictment, no stamps were affixed to the container.

Thereupon defendant moved for an acquittal, on the ground that the United States had failed to establish a prima facie case. The motion was overruled, and exception was reserved. The defendant rested, and again moved for an acquittal. The court found him guilty as indicted, and sentenced him.

In the first assignment of error defendant complains "that the indictment does not show that the defendant is not within exceptions set forth in the statute, particularly Liquor Taxing Act of 1934, title II, sec. 201, subsection (f) and subsection (e)." This assignment requires us to examine the Act of January 11, 1934 (Liquor Taxing Act of 1934, 48 Stat. 313), "to raise revenue by taxing certain intoxicating liquors," and particularly section 201 of title 2 thereof (26 USCA § 267) which we reproduce in the margin.[1] Defendant contends that the indictment should have negatived the exceptions contained in the statute.

Russell Morris and Brooks T. Sanders, both of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Irvin Goldstein, Asst. U. S. Atty., both of Washington, D. C.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appellant, defendant below, was indicted for transporting distilled spirits, the immediate container of which did not have affixed thereto stamps denoting the quantity of distilled spirits contained therein and

---

[1] "Sec. 201. No person shall (except as provided in section 202 [section 268 of this title]) transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal-revenue taxes imposed on such spirits. The provisions of this title [this section and sections 268 to 273 of this title] shall not apply to—

"(a) Distilled spirits placed in a container for immediate consumption on the premises or for preparation for such consumption;

"(b) Distilled spirits in bond or in customs custody;

"(c) Distilled spirits in immediate containers required to be stamped under existing law;

"(d) Distilled spirits in actual process of rectification, blending, or bottling, or in actual use in processes of manufacture;

"(e) Distilled spirits on which no internal-revenue tax is required to be paid;

"(f) Distilled spirits not intended for sale or for use in the manufacture or production of any article intended for sale; or

"(g) Any regularly established common carrier receiving, transporting, delivering, or holding for transportation or delivery distilled spirits in the ordinary course of its business as a common carrier."

In United States v. Cook, 17 Wall. 168, 173, 21 L. Ed. 538, the court said: "Where a statute defining an offence contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception, but if the language of the section defining the offence is so entirely separable from the exception that the ingredients constituting the offence may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is matter of defence and must be shown by the accused." Later on in the opinion (17 Wall. 168, 176, 21 L. Ed. 538) the court directed attention to the fact that commentators and judges have sometimes been led into error by supposing that the words "enacting clause," as frequently employed, mean the section of the statute defining the offense, as contradistinguished from a subsequent section of the same statute, which is a misapprehension of the term, "as the only real question in the case is whether the exception is so incorporated with the substance of the clause defining the offence as to constitute a material part of the description of the acts, omission, or other ingredients which constitute the offence." In other words, if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, it cannot be omitted in the pleading, "but if it is not so incorporated with the clause defining the offence as to become a material part of the definition of the offence, then it is matter of defence and must be shown by the other party, *though it be in the same section or even in the succeeding sentence."* (Italics ours.) The court, referring to Spieres v. Parker, 1 Term R., 141, observed that it and other examples given by commentators serve "to illustrate the general doctrine even better than some judicial opinions." The statute in that case provided that no mariner who was serving on board any privateer employed in certain British colonies should be liable to be impressed unless it appeared that he had previously deserted from an English ship of war; the act further provided that any officer who should impress such a mariner should be liable to a penalty of $50. Judgment was arrested in an action brought for the penalty there imposed, because the declaration did not allege that the mariner had not previously deserted, *"as that circumstance entered into the very description of the offence* and constituted a part of the transaction made penal by the statute." 17 Wall. 168, page 180, 21 L. Ed. 538.

Tested by the rule announced in the Cook Case, we are of the view that it was not necessary to allege or prove matter contained in the exceptions relied upon in the section of the statute under consideration. The language defining the offense in the first sentence of the section is so separable from the exceptions that the elements constituting the offense may be accurately defined without any reference to the exceptions. The statute provides that no person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal revenue taxes imposed on such spirits. This language is all-embracing and completely defines the offense.

■ Defendant also contends that the quantity of distilled spirits seized or transported being less than 5 gallons, the defendant was entitled to a presumption that the tax had been paid. As supporting this claimed presumption, defendant cites Dukes v. United States (C. C. A.) 275 F. 142, dealing with sections 3289, 3320, and 3323, R. S. (respectively sections 266, 332, and 335, tit. 26, U. S. C. [26 USCA §§ 266, 332, 335]). Section 3289 provides that "all distilled spirits found in any cask or package containing five gallons or more, without having thereon each mark and stamp required therefor by law, shall be forfeited to the United States." Sections 3320 and 3323 also relate to packages containing five gallons or more of distilled spirits. Section 3289, R. S., is clearly inconsistent with section 201 of title 2 of the act under consideration, and therefore to the extent that these earlier internal revenue laws are inconsistent with the later taxing act of 1934 they must yield to the latter. It is clear that section 201 of the 1934 act is not limited to packages containing five gallons or more; in other words, it relates as well to containers with less than five gallons. That the Congress intended to require the affixing of

stamps on containers with less than five gallons of distilled spirits is also indicated by section 203 of the 1934 act (26 USCA § 269), which provides "that in the case of stamps for containers of less than one half pint the price shall be one quarter of 1 cent for each stamp." If any doubt existed, we would be at liberty "to have recourse to the legislative history of the measure and the statements by those in charge of it during its consideration by the Congress." U. S. v. Great Northern Ry., 287 U. S. 144, 154, 53 S. Ct. 28, 32, 77 L. Ed. 223. Should such recourse be had, it would tend to confirm our view of the statute.[2]

■■ The defendant further contends that in order to convict for failure to have a stamp affixed the Government must show that a stamp existed which would denote the quantity of distilled spirits in the immediate container and be evidence of payment of all internal revenue taxes imposed on such spirits. As distilled spirits are taxable, and since, regardless of the amount of the contents of the container, there is no longer a presumption that the tax has been paid, the burden of showing payment of the

tax is on the defendant. See Hester v. United States (C. C. A.) 284 F. 487. The purpose of the stamp is to show that the tax has been paid on the distilled spirits in the particular container. The presence of a stamp on the container would be prima facie evidence of payment; lack thereof places the burden on the defendant to account for its absence. Section 203 provides that such stamps "shall be issued by the Commissioner of Internal Revenue" and also authorizes the sale of such stamps "prior to the effective date" of the title. It must be presumed that the officer of the government charged with the collection of the revenues has carried out the mandate of Congress and issued such stamps. Non-existence of such stamps would be a matter of defense.

Although not touched upon in the briefs of counsel, it is well to point out that section 202 of the act (26 USCA § 268) also constitutes an exception to the general inhibitions of section 201. It provides that persons who on the effective date of title 2 hold for sale "any distilled spirits in containers required to be stamped by section 201 [section 267 of this title], on which all

---

[2] "It [Title II of H. R. 6131, 73d Cong., 2d Sess.] merely provides that in whatever manner and *in whatever container* distilled spirits may from time to time be handled or sold, such distilled spirits shall bear a stamp, indicating the payment of all internal-revenue taxes levied thereon." (Italics ours.) Sen. Report No. 149, 73d Cong., 2d Sess.

Title II of the bill was an amendment offered on the floor of the House, and the House committee report on the bill (H. Rep. No. 271, 73d Cong., 2d Sess.) contained no reference to this title. However, Representative Doughton of North Carolina, Chairman of the Ways and Means Committee of the House and in charge of the measure during its consideration by the House, made a statement with reference thereto identical with the above-quoted statement from the Senate Report. Vol. 78, Cong. Record, p. 157. The following also appears in the proceedings of the House on that occasion (p. 157):

"Mr. Celler. Suppose a man has paid the tax on a barrel of liquor and the distiller then puts it into bottles. Would the bottles have to bear an internal-revenue tax?

"Mr. Doughton of North Carolina. The bottles would have to bear, not an internal-revenue stamp, but a stamp indicating the payment of the tax which would

only cost a nominal sum of perhaps 1 cent or 2 cents.

"Mr. Celler. There would be only one tax.

"Mr. Doughton of North Carolina. That is all.

"Mr. Vinson of Kentucky. When it goes into a container, not for immediate consumption, the stamp is attached.

"Mr. Celler. Just like a tobacco stamp.

"Mr. Vinson of Kentucky. Yes; and that stamp is to be destroyed so that it cannot be used again and it will be a different stamp from the stamp used in bottled in bond, and a person can very easily tell whether it is bottled in bond or whether it is blended, rectified, or moonshine or bootleg liquor.

"Mr. Doughton of North Carolina. And it carries no increase in tax whatever.

"Mr. Celler. Suppose a rectifier has a lot of alcohol and wants to make some imitation whisky or compound whisky, if he puts it into quarts, pints, or half pints, must he put these stamps on each one of the containers?

"Mr. Vinson of Kentucky. Any container that is not for immediate consumption.

"Mr. Britten. Will the gentleman yield for a question?

"Mr. Doughton of North Carolina. I yield to the gentleman from Illinois."

internal-revenue taxes have been paid, may possess such spirits, but shall, not later than the tenth day after such date, apply for, and shall be sold * * * the requisite stamps." Under the provisions of section 203, the cost of such stamps would be nominal. It thus appears that the exception provided in section 202 is not a circumstance entering into the description of the offense denounced in section 201, and that therefore it need not be negatived in the indictment or in the proof.

We have considered other contentions based upon the assignment of errors, and find them without merit.

The judgment, therefore, is affirmed.

Affirmed.