## WILLIAMS et al. v. UNITED STATES.

### No. 8451.

United States Court of Appeals for the District of Columbia.

Argued June 1, 1943.

Decided Sept. 27, 1943.

Messrs. Ben Lindas and Ethelbert B. Frey, both of Washington, D. C., for appellants.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and John P. Burke, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

The defendants were convicted of the crime of abortion. The indictment contained the negative averment that the operation was not necessary to preserve the life or health of the woman on whom it was performed. No evidence was offered by the government to support this negative averment, nor was the issue raised by the defendants. Their only defense was a denial that they had performed the operation.

At the close of the trial the defendants moved for a directed verdict and later for a new trial on the ground that the prosecution had failed to show that the abortion was not necessary to preserve the life or health of the complaining witness. The defendants appeal on the ground that the trial court erred in denying these motions. The sole question before us is whether the statute making abortion a crime in the District of Columbia puts the burden on the prosecution to prove as a part of its case that the operation was not necessary for life or health.

The statute under which the indictment was drawn reads as follows: "Whoever, with intent to procure the miscarriage of any woman, prescribes or administers to her any medicine, drug, or substance whatever, or with like intent uses any instrument or means, unless when necessary to preserve her life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned for not more than five years; or if the woman or her child dies in consequence of such act, by imprisonment for not less than three nor more than twenty years."[1]

The defendants rely upon a familiar doctrine of statutory construction to the effect that where an exception is incorporated in the enacting clause of a criminal statute, the burden of proof is on the prosecution to establish the fact that the defendant is not within the exception. But this rule is not one which can be mechanically applied. In referring to the rule, both this Court[2] and the Supreme Court

---

[1] D.C.Code, 1940, § 22–201.

[2] Queen v. United States, 1935, 64 App. D.C. 301, 77 F.2d 780.

of the United States[3] have pointed out that the real question is whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the description. That question cannot be determined by the mere position of the exception in the text.[4]

 In determining whether the exception is in fact a part of the description of the offense we must consider first whether the act in itself, without the exception, is ordinarily dangerous to society or involves moral turpitude. If so, it does not seem unjust to compel the defendants to offer evidence to justify their conduct because of necessity to preserve life or health. This view, we think, is obvious when we consider the practical effect on law enforcement if the prosecution is required to prove in the first instance that the defendants are not within the exception. It is a fair assumption that Congress did not intend to put difficulties in the way of the prosecution unnecessary in the interest of ordinary fairness.[5] Therefore, in a situation where the facts relating to the exception are difficult for the state to obtain and are at the same time peculiarly within the knowledge of the defendants, the exception is usually considered as a defense or justification and not as part of the description of the offense itself.[6]

These considerations have been well expressed by Mr. Justice Cardozo in discussing a similar question,—the constitutionality of a statute which shifted the burden of proof in a criminal prosecution to the defendant. He said: "The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression. Cf. Wigmore, Evidence, vol. 5, §§ 2486, 2512, and cases cited. * * * For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance * * * or, if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception. * * * The list is not exhaustive. Other instances may have arisen or may develop in the future where the balance of convenience can be redressed without oppression to the defendant through the same procedural expedient. The decisive considerations are too variable, too much distinctions of degree, too dependent in last analysis upon a common sense estimate of fairness or of facilities of proof, to be crowded into a formula. One

---

[3] United States v. Cook, 1872, 84 U.S. 168, 17 Wall. 168, 21 L.Ed. 538.

[4] "Nor is it a matter of importance whether the excepting clause is in parenthesis, or set off by commas, at the beginning of the sentence, or follows a proviso at the end." Nicoli v. Briggs, 10 Cir., 1936, 83 F.2d 375, 379.

[5] "The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." Tot v. United States, 1943, 63 S.Ct. 1241, 1246, 87 L.Ed. 1519.

[6] "The general principle, and we think the correct one, underlying the * * * decisions, is that it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control. See Chamberlayne's Modern Law of Evidence, vol. 2, § 983; Greenleaf on Evidence, (16th Ed.), vol. 1, § 79, p. 154; Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090; Dunlop v. United States, 165 U.S. 486, 502, 503, 17 S.Ct. 375, 41 L.Ed. 799; Mobile [J. & K. C.] R. Co. v. Turnipseed, 219 U.S. 35, 42, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A., N.S., 226, Ann.Cas.1912A, 463; Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 69 L.Ed. 904." Rossi v. United States, 1933, 289 U.S. 89, 91, 92, 53 S.Ct. 532, 533, 77 L.Ed. 1051.

Taylor v. United States, 8 Cir., 1927, 19 F.2d 813; Giacolone v. United States, 9 Cir., 1926, 13 F.2d 108; McCurry v. United States, 9 Cir., 1922, 281 F. 532; Faraone v. United States, 6 Cir., 1919, 259 F. 507; Smith v. United States, 8 Cir., 1907, 157 F. 721, certiorari denied 208 U.S. 618, 28 S.Ct. 569, 52 L.Ed. 647.

can do no more than adumbrate them; sharper definition must await the specific case as it arises." Morrison v. California.[7] The common sense tests laid down in the above opinion are as relevant in determining where the legislature intended to place the burden of proof as they are to the constitutionality of shifting that burden.

Applying these tests to the statute before us it is apparent that abortion is generally regarded as heinous in character. In the great majority of the states it cannot be justified even to preserve the victim's health.[8] Her life must be in danger. Arguments that abortion should be permitted to avoid social disgrace or poverty or illegitimacy have frequently been made, pointing out the prevalence of the operation and the tragic consequences of driving those who seek to escape childbirth to illegitimate practitioners.[9] Such arguments have never changed the abortion laws of any state. The performance of an abortion for any of these purposes is so offensive to our moral conception that it does not seem unjust to put on the defendant who has committed an abortion the burden of producing evidence that the act was justified on therapeutic grounds.[10]

Applying the second test, the effective enforcement of the law, it is clear that whether an abortion was necessary on therapeutic grounds should be peculiarly within the knowledge of the person who performed it. He should not undertake the operation unless he is convinced in good faith of its therapeutic necessity. No other person is in as good a position to testify as to the necessity of the operation. To compel the prosecution to introduce evidence in this case that the operation was unnecessary for health is to raise an artificial issue; the real issue of fact raised by the defendants is whether they performed the operation. In cases where the victim dies as a result of the operation, a requirement that the state prove its therapeutic necessity would too often put an impossible handicap on the prosecution, in the absence of the confession of the defendants themselves.[11]

We, therefore, conclude that the exception in the abortion statute before us was intended to furnish the defendants an opportunity for justification and not to be part of the description of the offense itself.[12]

We are supported in this conclusion by the particularly onerous handicap which would follow placing the burden of proof on the government under the somewhat unusual exception in the District of Columbia statute. This statute represents a compromise between morals and hygiene far in advance of the law in most jurisdictions. The majority of states permit abortion only to save the life of the mother.[13] Colorado[14]

---

[7] 1934, 291 U.S. 82, 88, 89, 90, 91, 54 S.Ct. 281, 284, 78 L.Ed. 664.

[8] A Functional Study of Existing Abortion Laws, 35 Columbia L.Rev. 87, 89 (1935).

[9] Rongy, Abortion: Legal or Illegal (1933) 89, 102, estimates that there are more than 2,000,000 abortions per year in the United States. See 35 Columbia L. Rev. (1935), 87, 92, n. 22.

[10] "Instances of the application of this principle can be cited in profusion. The cases that follow are typical examples: King v. Turner, 5 Maule & Sel. 206, where a defendant, having game in his possession in violation of a statute whereby possession was generally a crime, was held to have the burden of proving his special qualifications (cf. Yee Hem v. United States [268 U.S. 178, 183, 184, 45 S.Ct. 470, 69 L.Ed. 904], supra; also Spieres v. Parker, 1 T.R. 144, per Lord Mansfield); Fleming v. People, 27 N.Y. 329, a prosecution for bigamy, where, on proof that the defendant had contracted a second marriage during the lifetime of his first wife, the burden was laid upon him to prove exceptional circumstances that would have made the marriage lawful; and finally such cases as Potter v. Deyo, 19 Wend., N.Y., 361, 363, and United States v. Turner, D.C., 266 F. 248 (typical of a host of others) where a defendant has been subjected to the burden of producing a license or a permit for a business or profession that would otherwise be illegal. Cf. United States v. Hayward, 26 Fed.Cas. [page] 240, No. 15,336; Board Com'rs v. Merchant, 103 N.Y. 143, 8 N.E. 484, 57 Am.Rep. 705." Morrison v. California, 1934, 291 U.S. 82, 91, 54 S.Ct. 281, 285, 78 L.Ed. 664, note 4.

[11] See A Functional Study of Existing Abortion Laws, 35 Columbia L.Rev. 87 (1935), at page 94: "Indeed, officials today complain that a major cause of the unenforceability of the present laws is the single exception found in them."

[12] A contrary view applying the mechanical test to the position of the exception in an abortion statute is found in State v. Wells, 1909, 35 Utah 400, 100 P. 681, 136 Am.St.Rep. 1059, 19 Ann.Cas. 631.

[13] See 35 Columbia L.Rev. 87, 89 (1935).

[14] Colo.Stat.Ann. (Michie, 1935) c. 48, § 56.

and New Mexico[15] relax this to permit operations when necessary to prevent "serious and permanent bodily injury". Only in the District of Columbia is abortion permitted in order to preserve "health". This is a broad exception without precise limits. It is easy for a physician who directs an abortion in good faith to testify that it was necessary for health,[16] and such evidence would be extremely difficult to refute. Every consideration of practical enforcement of this liberal section of the Code requires that the exception be treated as a matter of defense and justification. It gives physicians a broader latitude than is found in most states. It should be interpreted so as to require them to come forward with evidence which with or without other evidence is sufficient to create a reasonable doubt of guilt.

The dangers of abortion apart from the moral aspects of the problem come from the fact that those who seek the operation are compelled to resort to incompetent, unscrupulous practitioners, operating in secrecy, without antiseptic conditions and without possibility of careful treatment in case complications arise. Because of the pressure on the victim to avoid social disgrace the law is difficult to enforce. It has been estimated that the annual number of abortions in the United States are between 800,000 and 3,000,000.[17] Figures have been collected indicating that there is one death for each 87 abortions in this country.[18] There is no doubt that this alarming death rate is due to secret operations by unskilled criminal abortionists. Under the District of Columbia Code a competent physician who acts in good faith will always be in a position to come forward with a justification for any operation which he undertakes to preserve the life or health of his patient. To construe the statute in such a way as to protect those who are unwilling or unable to produce evidence of the therapeutic necessity of an abortion for which they are responsible is to put a handicap on the prosecution for the benefit of no one but criminal practitioners.

The judgment of the lower court will be Affirmed.

---

[15] N.M.Stat.Ann. (Brice, 1941) § 41-302.

[16] "It is not at all likely that courts in the administration of justice would require more, in explanation of the operation performed, to overcome the existing penalty than that an honest judgment was exercised declaring the necessity of resorting to an instrument for the purpose of relieving the mother or saving the child."

Bradford v. People, 1880, 20 Hun, N.Y., 309, 311.

[17] Vaughan, Birth Control, Not Abortion (1922) 6 Birth Control Rev. 183; Frederick Taussig, (1935) Abortion: Spontaneous and Induced: Medical and Legal Aspects. See Notes 22 and 23, 35 Columbia L.Rev. (1935) 87, 92.

[18] 35 Columbia L.Rev. (1935) 87, 93.