### UNITED STATES v. MARINO et al.
### No. 301.

Circuit Court of Appeals, Second Circuit.
March 27, 1944.

772

J. Bertram Wegman, of New York City (Emanuel H. Reichart, of New York City, on the brief), for defendants-appellants.

Mario Pittoni, Asst. U.S. Atty., of Brooklyn, N. Y. (Harold M. Kennedy, U. S. Atty., and Vine H. Smith, Asst. U.S. Atty., both of Brooklyn, N. Y., on the brief), for the United States, plaintiff-appellee.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

When agents of the Alcohol Tax Unit on December 26, 1942, observed defendant Marino taking a carton from the back seat of an automobile in which both defendants had been riding, they proceeded to investigate and found that in the carton was an unstamped can containing about 3½ gallons of ethyl alcohol, 89.37% by volume, fit for beverage purposes, i.e., pure bootleg alcohol. In view of the basic proof thus presented of possession and transportation of desirable beverage alcohol unstamped, it is not surprising that the jury found defendants guilty of violation of 26 U.S.C.A. Int.Rev.Code, § 2803(a), prohibiting the possession or transportation of unstamped distilled spirits; and the several errors which defendants assign on this appeal hardly make the appeal meritorious against such proof.

The defendants' contention was that they had purchased the alcohol solely to use as radiator alcohol in trucks operated by defendant Marino, and hence that it was within the statutory exception of "distilled spirits not intended for sale or for use in the manufacture or production of any article intended for sale." 26 U.S.C.A. Int. Rev.Code, § 2803(a) (6). The federal agents had testified that at the time of arrest defendants told them that the alcohol had come from "Jack's Garage," to which they all proceeded, but which they found closed and securely locked; that defendants remarked that it had been open an hour before when they had acquired the alcohol from "a young fellow" whose identity they refused to divulge and who had taken it "out of a barrel in a small room off of the office"; and that two days later, when the agents returned and secured admission to the garage, they found it filled with new trucks, but without a trace of a barrel of alcohol in the indicated small room. Defendants then relied on the presence in the alcohol of some rust or iron oxide specks; in addition, they brought out, through their own testimony and that of defendant Vigorito's brother-in-law, Feioto, that they were driving past "Jack's Garage" when they stopped to talk wtih Feioto, a handyman there, and that he told them the place was now rented and asked them if they could use for the trucks some "no good" alcohol which he had found down the cellar while cleaning the place. They accepted the offer and tossed Feioto $2.50 just to help him out, since he was only a "hangaround." And they were intercepted by the officers before they got the alcohol home. The prosecution then cross-examined as to credibility, bringing out that Vigorito had been imprisoned three times, for grand larceny, dealing in stolen automobiles, and coercion, and was serving the last of these sentences at the time of trial, and that Marino had served a term for automobile theft. It then rested without offering evidence in rebuttal, and defendants moved for a directed verdict on the ground that there had been no contradiction of their defense. The court nevertheless submitted the issues to the jury upon a charge that the government had the burden of proving beyond a reasonable doubt that defendants had the alcohol in their possession for sale.

■ It is quite clear that if there was any error in this action it was one which favored the defendants, since it was a matter of affirmative defense for defendants to prove that their actions were within the statutory exception. United States v. Cook, 84 U.S. 168, 17 Wall. 168, 21 L.Ed. 538; Queen v. United States, 64 App.D.C. 301,

77 F.2d 780, certiorari denied 295 U.S. 755, 55 S.Ct. 917, 79 L.Ed. 1698; Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L. Ed. 151. But even under the trial court's interpretation of the law, the submission was still correct, for the credibility of interested witnesses is always a question of fact for the jury, United States v. Lo Biondo, 2 Cir., 135 F.2d 130; United States v. Sebo, 7 Cir., 101 F.2d 889; Wheeler v. United States, 5 Cir., 80 F.2d 678. Here further the circumstances in evidence, particularly that this was pure, not denatured, alcohol, certainly tended "to lessen the probability that such testimony was true." Quock Ting v. United States, 140 U.S. 417, 422, 11 S. Ct. 733, 735, 851, 35 L.Ed. 501.

Defendants also assail the court's charge to the jury as improper comment on the evidence, and particularly as a misstatement of the evidence. The court did state that defendants said "they got the stuff to use it as a non-freeze in trucks; and, of course, it was testified here that that was kind of a high price to pay for a non-freeze." Defendants claim that the only evidence as to price was Vigorito's statement that they paid $2.50 for three gallons or about 80 cents a gallon, whereas radiator alcohol "costs you $1.10." Obviously, however, the court was referring to the testimony of the government chemist that the alcohol was "expensive stuff for a radiator." On cross-examination the chemist did stress the fine and expensive quality of the alcohol; and while the court should have framed its comments in terms of the alcohol's expensive character, rather than high price, it is doubtful at most whether the jury was misled by this slip of the tongue. The court made it quite clear generally that its opinions were not binding on the jury; indeed, when defendants objected that the charge constituted an argument for the government and presented the facts in a manner to indicate to the jury an opinion on the part of the court, the judge, while saying in substance that this was the first time his right to state an opinion had been questioned, went on to reiterate that he had told the jury he was not expressing any opinion.

■ But in any event, there was no reversible error for want of a proper objection. Such a slip in a comparatively small matter is pre-eminently the type of thing which should have been called to the attention of the judge at once, so that he might have clarified or corrected his statement before the jury retired. United States v. Manton, 2 Cir., 107 F.2d 834, 846, 847, and cases cited, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012; Johnson v. United States, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704; Federal Rules of Criminal Procedure, 2d Prelim. Draft, Rule 32. The general objection to the expression of an opinion by the court in no way served to bring the particular matter to the attention of the court.

■ The same considerations are sufficient to dispose of a similar objection. The federal agents had testified that when they first observed the defendants' automobile at the curb of a side street, both defendants emerged from the car, and that defendant Marino then opened the rear door, but, upon looking up and seeing the officers and after exchanging glances with defendant Vigorito, slammed the door shut again. The officers then started their car and commenced to drive along the main street upon which they then were when they observed the action of Marino in taking the carton from the rear of defendants' car, which immediately precipitated the arrest. But there was no evidence that the defendants knew the men in the other car or knew that they were government agents. In its charge the court stated that defendants were entitled to the benefit of a reasonable doubt if their actions were consistent with innocence, and then continued: "Now, did they act like innocent people? Did they know these agents, and did they close the door after they saw them, and then after the agents had passed by, did they open the door and remove the carton?" In view of the agents' evidence to the effect that defendants discontinued removal of the carton from the car until they thought the agents had ceased to observe them, Judge Chase and I think the comment not improper under the circumstances. But Judge Frank thinks that the court, in asking whether the defendants knew "these agents," prejudicially added to the evidence in such a way as to give the incident a significantly different character from that which the testimony presented, and thus fell foul of Quercia v. United States, 289 U.S. 466, 470, 471, 53 S.Ct. 698, 77 L.Ed. 1321, and cases there cited and quoted. We all agree, however, that defendants' failure to call the court's attention specifically to the matter and to ask at once for a correction

of the statement leaves no occasion for a reversal on that point. And in all other respects the charge seems fair and judicious.

Other assignments of error are unimportant. The argument of the prosecuting attorney tending to raise an issue of veracity between the federal agents and the defense witnesses was justified on the evidence and was well within the scope of permissible comment, United States v. Wexler, 2 Cir., 79 F.2d 526, certiorari denied 297 U.S. 703, 56 S.Ct. 384, 80 L.Ed. 991; United States v. Buckner, 2 Cir., 108 F.2d 921, 928, certiorari denied 309 U.S. 669, 60 S.Ct. 613, 84 L.Ed. 1016, while there was no reason to mark for identification the report of the government officers, since the latter was privileged as part of the official records of the Treasury Department. Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846. Finally, the oral statements made by defendants before arrest were properly admitted. United States v. Grote, 2 Cir., 140 F.2d 413; United States v. Meyer, 2 Cir., 140 F.2d 652.

Affirmed.