### UNITED STATES of America
### v.
### Louis FABRIZIO.
### Crim. A. No. 1251.

United States District Court
D. Delaware.
April 19, 1961.

Daniel H. Jenkins, U. S. Atty., Phillip H. Williams, Asst. U. S. Atty., of Middle Dist. of Pennsylvania, Scranton, Pa., and William A. Kehoe, Jr., Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Thomas F. Burke, Pittston, Pa., Arthur A. Maguire and B. Todd Maguire, Wilkes-Barre, Pa., for defendant.

CALEB M. WRIGHT, Chief Judge.

Defendant was tried on nine counts of a criminal information charging violations of 29 U.S.C.A. § 186(a) (1956) over the four month period from August 31, 1958 to December 31, 1958. The jury failed to agree, and defendant has made a timely motion for judgment of acquittal.

The statutory provisions in effect at the time of the alleged violations [1] read as follows:

29 U.S.C.A. § 186:

"(a) It shall be unlawful for any employer to pay or deliver * * * any money * * * to any representative of any of his employees * * *.

* * * * * *

"(c) The provisions of this section shall not be applicable (1) with respect to any money * * * payable * * * to any representative who is an employee * * * as compensation for * * * his services as an employee * * *."

Defendant became President and General Manager of the Knox Coal Co. (Knox) on August 16, 1958, and held this position throughout the times specified in the information. The jury could have found from the evidence that during the pertinent four months the Coal Co. was paying money, in the form of checks signed by defendant, to one Alaimo, a committeeman of Local 8005, United Mine Workers, and a "representative" of the employees at Knox. The jury might further have found that although the payments were in the guise of wages, Alaimo in fact performed no services as an employee of Knox.

To render a verdict of guilty in this case, however, a jury must find defendant effectuated these payments knowingly and wilfully. In other words, a guilty verdict must be based on evidence in the record tending to demonstrate defendant's knowledge, at the time of the payments, that Alaimo did

---

1. This section was amended in 1959. See 73 Stat. 537, 29 U.S.C.A. § 186 (1960 Supp.).

not perform services as a Knox employee. A search of the record and two oral arguments have failed to disclose any substantial evidence of this nature.

To prove this essential, the government relies entirely on bits and pieces of circumstantial evidence. For some years prior to his assuming the office of President and General Manager in August, 1958, defendant was Secretary and Treasurer of Knox.[2] There is also evidence to the effect that defendant knew Alaimo and was seen talking with him on the job during the times specified in the indictment.[3] This, the government contends, in addition to defendant's assumption of "active" control over Knox's affairs in August, 1958, is enough to support the necessary finding.

On the other hand, the uncontradicted evidence shows defendant exercised only nominal authority before August, 1958.[4] He was often not present at the site of the operations and on occasion signed as many as 3,000 payroll checks in blank.[5] It is clear that prior to August, 1958, control over the payroll was in one Dougherty, then President of Knox.[6] Moreover, defendant's control of Knox's operations or his knowledge of what was occurring at Knox after August, 1958, is not as great as the government contends. The evidence is virtually uncontradicted to the effect that defendant, who, because of an illness, had not been in the mines for years,[7] expected Dougherty to return[8] and directed everyone to carry on as before.[9] In effect, operations were put on a "stand-by" basis awaiting Dougherty's return.[10] Upon taking office, defendant immediately delegated much of his authority by elevating one Groves to a position of general superintendent with the power to hire and fire[11] and by hiring a consultant engineer.[12] The fact he knew Alaimo is of little value, for Alaimo had at previous times been a bona fide employee of Knox.[13] Moreover, the Knox operations were of a substantial size, covering three miles[14] and requiring three shifts of workmen.[15] Under these circumstances, it cannot be said defendant, exercising the amount of authority he did, knew Alaimo had ceased to perform services and was receiving his salary as a "payoff". Nor is there any evidence to show the continuing payments to Alaimo after defendant's assumption of office were more than the result of a policy of administrative continuity carried out because of an expectation of Dougherty's imminent return. In any event, the government, while proving the payments, has failed to connect them sufficiently with defendant.

The government has argued that even if the above be true, it is a matter involving subsection (c), an exception to the general prohibition contained in subsection (a), and the burden is on defendant, not the government, to show he comes within the exception. In the words of government counsel, criminal defendants desiring to take advantage of such an exception to a criminal statute are under a burden "to set it up and establish it", and when, as in this case, they present no evidence on their own behalf, they take a "calculated risk".

---

2. N.T. 159.

3. N.T. 350.

4. N.T. 328.

5. N.T. 160. A second signature was necessary on all Knox checks. N.T. 160.

6. N.T. 160.

7. N.T. 327–8.

8. N.T. 153–4. Dougherty left unexpectedly after a falling out with defendant over the placing of one of the latter's nephews on the payroll. N.T. 152–3.

9. N.T. 156.

10. N.T. 328. The fact that Dougherty did not return is of no importance. The information encompasses only the four months immediately after Dougherty's departure, and, in any case, Knox ceased operations shortly thereafter.

11. N.T. 154, 329.

12. N.T. 339–40.

13. N.T. 329.

14. N.T. 337.

15. N.T. 348.

And, indeed, there are broad statements in some cases indicating the burden is upon a defendant to bring himself within an exception to a criminal statute.[16] See e. g. 7 Fifths Old Grand-Dad Whiskey v. United States, 10 Cir., 1947, 158 F.2d 34, certiorari denied 330 U.S. 828, 67 S.Ct. 870, 91 L.Ed. 1277. These statements, however, were made in a factual context in which there was no evidence from any source tending to bring the defendant within the immunizing exception. In effect, then, they hold merely the government need not, absent such evidence, negative the exception beyond a reasonable doubt.

The government's argument on this point confuses two distinct meanings of the term "burden of proof". On the one hand, it may be used to indicate the party who bears the burden of persuasion and the concomitant risk of non-persuasion of the trier of fact. On the other hand, it may refer only to the burden of going forward with the evidence on a particular issue. See McCormick on Evidence, §§ 306–7, 321 (1954). Although the distinction is of little general importance because both burdens usually fall upon the same party, there are certain situations in which the party bearing the risk of non-persuasion need not offer proof on a particular issue until there is unfavorable evidence in the record raising that issue. Thus, the prosecution in a criminal case may rely upon a presumption of the defendant's sanity until some evidence is introduced impairing or weakening that presumption. Once this occurs, however, the prosecution must prove sanity upon all the evidence beyond a reasonable doubt. Davis v. United States, 1895, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612. Similarly, while a defendant desiring to take advantage of an alibi must produce evidence of it, he need not prove it to the satisfaction of the jury, the burden of persuasion upon the evidence remaining at all times upon the prosecution. United States v. Marcus, 3 Cir., 1948, 166 F.2d 497; Thomas v. United States, 9 Cir., 1954, 213 F.2d 30. The same general rule has been held to apply where a defendant desires to bring himself within an exception to a criminal statute.[17] In Williams v. United States, 1943, 78 U.S.App.D.C. 147, 138 F.2d 81, 153 A.L.R. 1213, the defendant was tried under a statute which condemned abortion but excepted cases where it was necessary to preserve the life or health of the accused. The Court held there that while the government need not negative the application of the exception in its main case, once the defendant brought forward sufficient evidence of the justifiable purpose to create a reasonable doubt,[18] the burden of persuasion on the issue fell on the government. The rule adopted by the Court in this case is succinctly stated at 153 A.L. R. 1353:

" * * * [W]hen evidence appears which tends to bring the de-

---

16. The two cases cited by the government, McKelvey v. United States, 1922, 260 U. S. 353, 43 S.Ct. 132, 67 L.Ed. 301 and United States v. Lavery, D.C.M.D.Pa. 1958, 161 F.Supp. 283, are not particularly relevant to the issue raised, for they hold only that the indictment need not specifically negative the exception.

17. The word "exception", as used here, is a legal conclusion reached only after the particular statute has been construed. Thus, a court may find the so-called "exception" is actually a material element of a crime to be proved or negatived by the prosecution in its main case. This process of interpretation involves issues such as which party is best able to produce

evidence on the point. *It is unnecessary, however, to determine the effect of 29 U.S.C.A. § 186(c) in this respect, and it is not decided here.* The government's evidence clearly brought that subsection into this case, and, under this Court's ruling, it was then incumbent upon the prosecution to negative it beyond a reasonable doubt. Under either interpretation, therefore, the result is the same.

18. It is unnecessary to decide what quantum of evidence is necessary to bring such an issue into a case. Whether it must be sufficient to create a reasonable doubt or something less is not relevant here because there was more than enough evidence under any test.

fendant within an exception, * * the burden of proof is upon the prosecution, on the whole case, to overcome that evidence beyond a reasonable doubt."

 Having adopted this rule, the result is clear. The government's case itself was replete with evidence tending to bring defendant within the exception of 29 U.S.C.A. § 186(c). Having raised the issue, the burden fell upon the government to negative it beyond a reasonable doubt. As previously stated, it failed to do this as to defendant's knowledge that Alaimo performed no services for Knox. The government's proof on wilfulness is, therefore, inadequate, and a judgment of acquittal must be entered.

Submit order.