*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CT-0345

LEE R. CARPER, APPELLANT,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CTF-005905)

(Hon. Deborah Israel, Trial Judge)

(Argued October 24, 2024            Decided March 20, 2025)

*Adrian E. Madsen* for appellant.

*Thais-Lyn Trayer*, Deputy Solicitor General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal Deputy Solicitor General, were on the briefs, for appellee.

Before BECKWITH, EASTERLY, and McLEESE, *Associate Judges*.

McLEESE, *Associate Judge*: Appellant Lee R. Carper challenges his conviction for operating a motor vehicle without a permit. We affirm.

## I. Factual and Procedural Background

The evidence at trial included the following. Metropolitan Police Department (MPD) Officer Pablo Rosa conducted a traffic stop of a car that Mr. Carper was driving. When Officer Rosa asked Mr. Carper for his license and registration, Mr. Carper responded that he did not need a license and did "not have any license at all."

An investigator with the District of Columbia Department of Motor Vehicles (DMV) examined DMV records and found no records relating to Mr. Carper.

Both in a motion for judgment of acquittal and during closing argument, Mr. Carper argued that the District of Columbia bore the burden of proving beyond a reasonable doubt not only that Mr. Carper did not have a permit issued by the District of Columbia but also that Mr. Carper did not have a permit issued by any other state. The trial court disagreed and found Mr. Carper guilty, concluding that (1) D.C. Code § 50-1401.01(d) prohibits driving in the District of Columbia without a permit issued by the District of Columbia; (2) the District of Columbia proved beyond a reasonable doubt that Mr. Carper did not have a District of Columbia permit; (3) D.C. Code § 50-1401.02(a) creates a temporary exemption from Section 50-1401.01(d) for non-residents who have a valid permit from a different

jurisdiction, including foreign countries; (4) that exemption is a defense as to which the burden of proof rests on the defendant; and (5) Mr. Carper did not show that he had a permit from anywhere.

## II. Sufficiency of the Evidence of Operating a Vehicle without a Permit

Mr. Carper renews his argument that the District of Columbia was required to prove not only that Mr. Carper did not have a permit from the District of Columbia but also that he did not have a permit from anywhere else. We agree with the trial court that possession of an out-of-jurisdiction permit is a defense as to which Mr. Carper bore a burden of proof.

We note that the parties do not clearly distinguish between burdens of production and ultimate burdens of proof. *See generally, e.g.*, *Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 757 (D.C. 2008) ("[T]he term 'burden of proof' is ambiguous, encompassing two separate burdens: the burden of production and the burden of persuasion; the former refers to the burden of coming forward with satisfactory evidence of a particular fact in issue, and the latter constitutes the burden of persuading the trier of fact that the alleged fact is true.") (brackets and internal quotation marks omitted). Because Mr. Carper did not introduce any evidence that he possessed a permit from anywhere, we need not and do not address whether a

defendant's burden with respect to the defense of possession of an out-of-jurisdiction permit is solely one of production or also one of persuasion.

As Mr. Carper acknowledges, the District of Columbia Court of Municipal Appeals long ago held, under an earlier version of the no-permit statute, that possession of an out-of-jurisdiction permit was a defense rather than an element. *Bush v. District of Columbia*, 78 A.2d 234, 234-36 (D.C. 1951) (provisions then codified at D.C. Code §§ 40-301 and -303). Decisions of the Court of Municipal Appeals are binding on divisions of this court. *Bradley v. District of Columbia*, 107 A.3d 586, 602 n.40 (D.C. 2015).

The court in *Bush* reasoned as follows. First, D.C. Code § 40-301(e) defined the offense of driving without a District of Columbia permit. *Bush*, 78 A.2d at 234. Second, D.C. Code § 40-303 established an exemption from Section 40-301 for non-residents who had an out-of-jurisdiction permit. *Id.* at 234-35. Third, "where a person claims to fall within an exception to a statute, this is a matter of defense and must be shown by the defendant, and it is not the duty of the government to either allege or prove that the defendant does not come within the exception." *Id.* at 235 (internal quotation marks omitted). Fourth, "[i]t would be an almost impossible task for the law enforcement officers to prove that a motorist" did not have an

out-of-jurisdiction permit. *Id.* Fifth, "the facts relating to [a motorist's] residence and . . . compliance with the licensing laws of another state are peculiarly within the knowledge of the motorist and may be proved by [the motorist] without difficulty." *Id.* The court concluded that "[t]his manifest disparity in convenience of proof and opportunity for knowledge calls for affirmative proof by the motorist, and we think imposes no undue hardship upon" the motorist. *Id.* (internal quotation marks and footnote omitted); *see also id.* at 235 ("[I]n a situation where the facts relating to the exception are difficult for the state to obtain and are at the same time peculiarly within the knowledge of the defendants, the exception is usually considered as a defense or justification and not as part of the description of the offense itself.") (quoting *Williams v. United States*, 138 F.2d 81, 82 (D.C. Cir. 1943)).

The wording of the no-permit offense that is now codified at Section 50-1401.01(d) and the exemption that is now codified at Section 50-1401.02(a) has changed in some respects since *Bush* was decided. Importantly, however, the current version, just like the version at issue in *Bush*, defines an offense in one section and sets out an exemption in another. D.C. Code §§ 50-1401.01(d), -1401.02(a). We see no substantive changes that would provide a basis for reaching a conclusion different from the conclusion that the court reached in *Bush*.

We are not persuaded by Mr. Carper's arguments to the contrary. Mr. Carper argues: (1) *Bush* applied a test articulated in *Williams*, 138 F.2d at 82; (2) under that test, a statutory exception is a defense rather than an element of an offense only if both (a) the act prohibited by the statute "in itself, without the exception, is ordinarily dangerous to society or involves moral turpitude," *id.*; and (b) "the facts relating to the exception are difficult [for] the state to obtain and are at the same time peculiarly within the knowledge of the defendants," *id.*; (3) driving without a District of Columbia permit is not ordinarily dangerous and does not involve moral turpitude; (4) given technological advances such as the internet and computerized law-enforcement databases, proving that a defendant lacks an out-of-state permit would no longer be unduly burdensome to law enforcement; (5) a division of this court would be free to reach a different conclusion from that reached in *Bush*; and (6) this court should therefore hold that the prosecution bears the burden of proving that a defendant lacked an out-of-state permit.

Our reasoning differs from Mr. Carper's in a number of respects. First, barring constitutional limits that Mr. Carper does not invoke, whether a statutory exception is an element of an offense or instead an affirmative defense is a matter of statutory interpretation. *See, e.g.*, *Herrington v. United States*, 6 A.3d 1237, 1245 (D.C. 2010) (stating that whether circumstance was affirmative defense is "a matter

of statutory interpretation"); *cf. Smith v. United States*, 279 A.3d 850, 854 (D.C. 2022) ("The legislature has authority to establish crimes and define their elements."); *id.* (within constitutional limits, whether circumstance is element of offense or sentencing factor to be determined by trial court is "a matter of statutory interpretation").

Neither *Williams* nor *Bush* applied a rigid test to determine whether the circumstances at issue were elements or instead affirmative defenses. Rather, each decision considered various factors that were relevant to the proper interpretation of the particular statute at issue. Thus, for example, although *Williams* did express views about the dangerousness and moral turpitude of the offense at issue (criminal abortion), 138 F.2d at 83, *Bush* did not mention either dangerousness or moral turpitude when holding that lack of an out-of-jurisdiction permit was a matter of defense rather than an element, 78 A.2d at 234-36.

Second, we can assume that technological advances have made it easier for law-enforcement officers to obtain *information* relating to whether a person driving in the District of Columbia without a District of Columbia permit has an out-of-jurisdiction permit. Mr. Carper has not established, however, that technological advances have made it feasible for law enforcement to obtain

*admissible evidence* that a defendant driving in the District of Columbia without a District of Columbia permit has no permit from "any state, territory, or possession of the United States, or of a foreign country or political subdivision thereof." D.C. Code § 50-1401.02(a). Our decision in *Bush* indicates that the relevant inquiry is not what information is available but rather what the government could reasonably be expected to prove at trial. 78 A.2d at 235 (repeatedly referring to "proof" and what could be "prove[n]").

Third, Mr. Carper suggests that at a minimum the prosecution should bear the burden of proving that a defendant lacked an out-of-jurisdiction permit issued by nearby jurisdictions such as Maryland and Virginia. We see no plausible textual or other basis, however, upon which the District of Columbia no-permit provisions could be interpreted to make lack of a permit from nearby jurisdictions an element of the offense but possession of a permit from more distant jurisdictions an affirmative defense.

In sum, we reaffirm that possession of an out-of-jurisdiction permit is a defense, not something that the prosecution must negate as an element of the no-permit offense. Mr. Carper's sole challenge to the sufficiency of the evidence is that the District of Columbia failed to establish that Mr. Carper lacked an

out-of-jurisdiction permit. For the reasons stated, however, we conclude that the District of Columbia did not have that burden. Moreover, the record permitted the trial court to find that Mr. Carper had not established that he had an out-of-jurisdiction permit. Mr. Carper provided no evidence that he had an out-of-jurisdiction permit, and the record supported the trial court's findings that Mr. Carper did not produce a license when asked to do so and admitted to the police that he did not have any license at all.

### III. Granting of the Motion to Continue

On the original trial date, the District of Columbia indicated that one of its witnesses was scheduled to testify before a grand jury that day. The witness was referred to as an "officer" but was not named because of concerns about revealing confidential grand-jury information. In this court, the parties agree that Officer Rosa was the witness at issue. On the day of trial, the District of Columbia did not indicate that Officer Rosa was an essential witness and did not proffer what Officer Rosa's testimony was expected to be.

Mr. Carper objected to a continuance and asked when the officer had learned of the conflicting obligations to testify. The trial court declined to address that issue and granted a twelve-day continuance.

Mr. Carper argues that the trial court committed reversible error by granting the continuance. The parties agree that this court reviews the trial court's ruling deferentially. *See, e.g.*, *Moctar v. United States*, 718 A.2d 1063, 1065 (D.C. 1998) ("[T]he grant or denial of a continuance rests within the sound discretion of the trial judge, to whom we accord wide latitude."). The parties also agree that the overall question for the trial court was whether a continuance was "reasonably necessary for a just determination of the cause." *Bedney v. United States*, 684 A.2d 759, 766 (D.C. 1996) (internal quotation marks omitted). The parties disagree, however, about the standard that applies to the trial court's decision whether to grant a continuance to permit a party to obtain the testimony of a witness. Mr. Carper argues that the trial court may not grant a continuance for that reason unless the party seeking the continuance "make[s] a fivefold showing": who the witness is; what the witness's testimony would be; the relevance and competence of the expected testimony; that the witness's testimony could probably be obtained if a continuance were granted; and that the party had been diligent in seeking the witness's testimony. *Id*. The District of Columbia argues that the factors listed in *Bedney* are not mandatory elements and that trial courts have "wide latitude" when ruling on motions for a continuance. *Edelen v. United States*, 627 A.2d 968, 972 (D.C. 1993).

We have recently flagged "the question whether there are certain mandatory prerequisites before a trial court may permissibly grant a motion to continue for a party to obtain evidence." *Cox v. United States*, 325 A.3d 360 at 369 (D.C. 2024). We did not decide that issue in *Cox*, and we similarly need not and do not decide the issue in this case. Rather we assume for purposes of this decision that the trial court was not permitted to grant a continuance in the absence of the "fivefold showing" described in *Bedney*, 684 A.2d at 766. We also assume without deciding that the trial court therefore erred in granting the continuance. We hold, however, that any error was not reversible error in the circumstances of this case.

We have said that "[t]o establish abuse of [the trial court's] discretion [to grant or deny a motion for continuance], the defendant must, at the minimum, make some showing of prejudice." *Moctar*, 718 A.2d at 1065 (internal quotation marks omitted); *see generally, e.g.*, *Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1092 (D.C. 2022) ("[P]rejudice is a necessary component of abuse of discretion."). Under that line of authority, reversal in this case would appear to be unwarranted.

As we have recently noted, we have found no case in this jurisdiction reversing an order granting a continuance. *See Cox*, 325 A.3d at 371. We assume, however, that reversal of an order granting a continuance could be appropriate in

some circumstances. For example, if the trial court delayed a trial without good cause and the delay ended up making important evidence unavailable to the party opposing the continuance, reversal might well be warranted. In the present case, however, Mr. Carper identifies a different theory of prejudice: if the trial court had declined to grant a continuance, Officer Rosa would not have testified at trial and the District of Columbia would not have been able to prove its case. We are not persuaded by that theory of prejudice.

From a factual perspective, it seems uncertain what would have happened if the trial court had declined to grant a continuance in this case. The prosecutor at one point represented that the witness at issue was going to try to walk over to the courthouse and was not currently before a grand jury. It thus is unclear how the witness's apparently conflicting obligations would or could have been resolved if the trial court had declined to continue the trial in this case.

More fundamentally, we do not believe that a party suffers unfair prejudice warranting reversal simply because a continuance made additional testimony available on the later trial date. *See Cox*, 325 A.3d at 370-71 (indicating that availability of additional evidence after continuance was granted was not "in and of itself . . . unfairly prejudicial to the party opposing the continuance"); *see also, e.g.,*

*Crocker v. State*, 563 N.E.2d 617, 620-21 (Ind. Ct. App. 1990) (even if record did not establish that missing prosecution witness would be available if continuance were granted, reversal of order granting continuance was not warranted because defendant failed to show prejudice); *In re Greisamer*, 547 P.2d 155, 156-57 (Or. Ct. App. 1976) (although trial court failed to comply with statutory requirement that party seeking continuance submit affidavit showing materiality of testimony of missing witness, reversal was not warranted because "the parties were ultimately given adequate opportunity to present their full cases within three months from the previous time set for the trial"), *rev'd en banc on other grounds*, 555 P.2d 28 (Or. 1976).

We do not rely exclusively, however, on the conclusion that Mr. Carper failed to establish that the grant of a continuance unfairly prejudiced him so as to justify reversal. Rather than relying on that precise rationale, the District of Columbia instead argues that any error in granting a continuance was harmless. Mr. Carper has not suggested that any error affected his constitutional rights. Under the harmless-error standard applicable to non-constitutional errors, the District of Columbia would "bear[] the burden of proving that the error is harmless." *Williams v. United States*, 210 A.3d 734, 744 n.24 (D.C. 2019). Generally, "[t]o hold a non-constitutional error harmless, we must find it *highly probable* that the error did

not contribute to the verdict." *Lalchan v. United States*, 282 A.3d 555, 562 (D.C. 2022) (internal quotation marks omitted).

There is at least some support for the idea that the harmless-error doctrine might apply to our review of orders granting or denying continuances. *See Gilliam v. United States*, 80 A.3d 192, 204-05 (D.C. 2013) (reversing defendants' convictions because trial court erred in denying defense motion for continuance and error was not harmless); *see generally, e.g.*, *Decuir v. United States*, 285 A.3d 512, 521 (D.C. 2022) ("Given our conclusion that the trial court abused its discretion . . . , we must reverse unless the government can show that the error was harmless . . . .") (internal quotation marks omitted).

We need not attempt to clarify in this case the relationship between the concepts of abuse of discretion, prejudice, and harmless error, either generally or in the specific context of our review of orders granting or denying continuances. Rather, we assume without deciding (in part because the District of Columbia has not argued otherwise) that the District of Columbia bore the burden of proving that any error in granting the continuance was harmless. In the particular circumstances of this case, we hold that any error does not warrant reversal.

As previously noted, Mr. Carper addresses the issue of harmless error by arguing that if the trial court had declined to grant a continuance, Officer Rosa would not have testified at trial and the District of Columbia would not have been able to prove its case.  But beyond citing to the harmless-error standard applicable to non-constitutional issues, *see Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946), Mr. Carper cites no support for this argument.  In particular, he cites no case law for the proposition that granting a continuance so that a witness who failed to appear for a particular trial date can appear days later, where no statutory or constitutional rights are asserted to have been implicated in the scheduling of the trial, constitutes harm justifying reversal.  And we are aware of none.  We hold that reversal is not warranted on that basis in the circumstances of this case.  *Cf. Cox*, 325 A.3d at 370-71 (D.C. 2024) (stating that possibility that continuance will allow party to obtain additional evidence was not "in and of itself . . . unfairly prejudicial to the party opposing the continuance"); *see also id*. at 371 (acknowledging cases from other jurisdictions "in which appellate courts have reversed trial-court orders granting continuances . . . in criminal or juvenile-delinquency cases, which raise special concerns about the defendant's or respondent's constitutional (and in some jurisdictions statutory) right to a speedy trial").

In sum, for the foregoing reasons, even assuming that the trial court erred by granting a continuance, we hold that reversal is not warranted in the circumstances of this case.

## IV. Denial of the Motion to Dismiss for Want of Prosecution

Mr. Carper argues that the trial court abused its discretion by denying Mr. Carper's motion to dismiss for want of prosecution. We uphold the trial court's ruling.

About a week before the original trial date, the District of Columbia filed a motion (1) indicating that it intended to disclose to Mr. Carper materials from MPD's Personnel Performance Management System (PPMS) and (2) seeking a protective order limiting the subsequent disclosure of that information. Mr. Carper opposed the motion. The trial court granted the motion the night before trial was scheduled to begin.

The next morning, the District of Columbia provided the PPMS materials to Mr. Carper's defense attorney. Mr. Carper moved to dismiss for want of prosecution, arguing that the disclosure of the PPMS materials had been unreasonably delayed and that the District of Columbia was not prepared for trial

given that its witness was not available to testify. The trial court denied the motion, explaining that (1) the delay in granting the protective order was in part the trial court's fault; (2) any prejudice to defense counsel from the delayed disclosure could be remedied by giving defense counsel adequate time to review the materials at issue; and (3) the unavailability of the witness due to an obligation to testify in another matter was not a basis for dismissal for want of prosecution.

Whether to grant or deny a motion to dismiss for want of prosecution "is within the sound judicial discretion of the trial judge." *United States v. McWilliams*, 163 F.2d 695, 696 (D.C. Cir. 1947); *see District of Columbia v. Cruz*, 828 A.2d 181, 183 (D.C. 2003) ("Generally, this court reviews a trial court's decision to dismiss a case for want of prosecution under a discretionary standard."); *see generally* Super. Ct. Crim. R. 48(b)(3) (stating that trial court may dismiss charges "if unnecessary delay occurs in . . . bringing a defendant to trial"). "[W]hile authority exists under [R. 48(b)] to dismiss for want of prosecution, such should be used sparingly . . . ." *United States v. Cummings*, 301 A.2d 229, 233 (D.C. 1973).

We hold that the trial court acted within the scope of its discretion by denying the motion to dismiss for want of prosecution. We note at the outset that Mr. Carper did not argue in the trial court, and does not argue in this court, that the trial court

should have dismissed the case with prejudice, so as to bar further prosecution. *See generally, e.g.*, *United States v. Stephenson*, 891 A.2d 1076, 1078 (D.C. 2006) ("[D]ismissal of an indictment with prejudice for want of prosecution is authorized only where the defendant has been deprived of [the] constitutional right to a speedy trial.").

In our view, providing defense counsel with whatever additional time was needed to review the newly disclosed PPMS materials, rather than dismissing the case, was a reasonable remedy in the circumstances. *See, e.g.*, *Hasbrouck v. Bernstein Mgmt. Corp.*, 312 A.3d 1223, 1226 (D.C. 2024) ("[D]ecisions to dismiss for want of prosecution . . . should be made only after the trial court has considered lesser sanctions.") (internal quotation marks omitted); *id.* at 1227 ("Both this court's precedents and those from other jurisdictions instruct that a single instance of tardiness, absent any finding that the party was deliberately late, will not justify the outright dismissal of a case."); *cf., e.g.*, *Ashby v. United States*, 199 A.3d 634, 646 (D.C. 2019) (along with another sanction, continuances to allow defense to make adequate use of belatedly disclosed material were "just and appropriately addressed the violation"). Moreover, we are not persuaded that the trial court was required to grant a motion to dismiss without prejudice based on the absent witness. Mr. Carper's sole argument on this point is that the trial court should have

determined whether the District of Columbia and the absent officer had been diligent. Even if we assume that the District of Columbia and/or the officer had not been diligent, however, we see no abuse of discretion in the trial court's refusal to dismiss the case on that basis. In that regard, we note that a dismissal without prejudice would have permitted the District of Columbia to simply file a new charging document and proceed in the case. *See generally, e.g.*, *Cummings*, 301 A.2d at 231 ("[T]hese orders of dismissal were without prejudice which means the charges can be reinstated by the filing of new informations."). That being so, we do not see why the trial court would be required to grant that relief rather than denying the motion to dismiss.

In sum, we hold that the trial court acted within its discretion in denying the motion to dismiss without prejudice.

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*