## UNITED STATES v. ZAVALA.
### No. 173.

Circuit Court of Appeals, Second Circuit.
Jan. 3, 1944.

Harry G. Herman, of New York City, for Antonio Zavala, defendant-appellant.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant, a native of Spain and Spanish subject who had lived for some seventeen years in Mexico, arrived at the port of New York from Lisbon, Portugal, on or about April 16, 1942, and presented a baggage declaration in which he omitted to state that he was bringing in any currency. One of the customs inspectors informed him that if he had anything which had not been noted in his declaration he could amend it and he thereupon caused it to be amended by declaring nine pieces of jewelry and $850 in United States currency, items which the inspector added to the declaration in his presence. When the defendant was asked "if he was certain he did not have any more money, and if he did want to declare more money that was the opportunity", he replied that "all the money he had was declared". But in fact he

---

had $19,500 in currency in addition to the $850 declared. This was found in a small suitcase containing ten $1000 bills and nineteen $500 bills. In the course of the examination of the defendant and his baggage, one of the government agents said to him: "There is a law which has been enacted, a Presidential proclamation of April 6, 1940, which prohibits the bringing in of currency into the United States of any denomination, either this country or foreign, without first declaring it, so that it can be run through the Federal Reserve channels to be checked. If you do not declare your currency, all of it, you will be prosecuted, according to the violations and the penalties set forth in this Presidential proclamation."

When the $19,500 of currency was found in his suitcase he said: "Now 20 years of my earnings have gone in a moment", and after being asked why he had not declared this money and being interrogated on two or three occasions he replied: "When I arrived in Bermuda I was advised there that I could only bring into this country a certain amount of money and that I must declare all of the other, and have it go through the proper channels if I wish to take it with me and go out of the United States. When I left Bermuda we entered the Port of Havana. I attempted at that time to cable the money to Mexico City, and due to the facilities there I was unable to cable my money to Mexico City, and, therefore, I decided to hide it and bring it into the United States illegally, take it through the Customs and run my chances of getting it into Mexico."

■ Whether or not the vicarious amendment of the declaration was not technically in accord with the Tariff Act, it is evident that the defendant thereby caused a false representation to be made to customs authorities and thus violated Section 80 of Title 18.

The defendant was indicted for knowingly making a false and fraudulent baggage declaration, in violation of the provisions of Title 18, Section 80 of the United States Code Annotated wherein he set forth that he possessed $850 in United States currency and no more, whereas he had brought into the country and then had in his possession the further sum of $19,500 in such currency which he did not mention in his declaration or otherwise. The currency represented sales in Spain and Portugal converted in Portugal into United States money.

Section 80 of Title 18 provides that: "Whoever shall make or cause to be made or present or cause to be presented for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, * * * any claim upon or against the Government of the United States, or any department or officer thereof, * * *, knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly or willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

■ We feel no doubt that Section 80 covers both the use of documents to defraud the government and also the use of any false statement, whether oral or written, as to any matter within the jurisdiction of any department or agency of the United States. Here the proof shows that false oral representations were made and also that the declaration in writing was submitted in amended form with the authority of the defendant. It could of course make no difference that the amendment was written in by the government agent with the declarant's approval. The whole thing was a "scheme, or device" to "cover up * * * a material fact", to wit, the possession of $19,500 of undeclared currency of the United States. The decisions relied on by the defendant in which false documents were involved, such as United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; Hamner v. United States, 5 Cir., 134 F.2d 592; United States v. Goldsmith, 2 Cir., 108 F.2d 917; and United States v. Presser, 2 Cir., 99 F. 2d 819, cannot be regarded as limiting the scope of Section 80 to documents or written representations. But here there was a written document furnished both in its original and amended form by the defendant, and in either form it was plainly knowingly false.

It is also plain that the declaration and representation involved a "matter within the jurisdiction" of the United States Treasury and its Customs Bureau, and, therefore, of a "department or agency of the United States", within the meaning of Section 80 of Title 18.

The defendant argues that there was no "matter within the jurisdiction of any department or agency of the United States" because General Ruling 6A, which purported to deal with United States currency, exceeded the scope of Executive Order 8389, the source of its authority. However, Section 4 of Executive Order No. 8389 of April 10, 1940, as amended, 12 U.S. C.A. § 95 note, authorized the Secretary of the Treasury, or the Attorney General, to require "complete information relative to, any transaction referred to in section 5(b) of the [Trading With the Enemy] Act of October 6, 1917, (40 Stat. 415), as amended, or relative to any property in which any foreign country or any national thereof has any interest of any nature whatsoever * * *." Section 5(b) (1) of the Act of October 6, 1917, in Subdivision (A), 50 U.S.C.A.Appendix, § 5(b) (1) (A), authorized the President to "investigate, regulate, or prohibit * * * the importing, exporting, hoarding, melting, or earmarking of gold or silver coin or bullion, currency or securities", and also, in Subdivision (B), to investigate "any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right * * * with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." Section 5(b) also authorized the President to do these things "through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe * * *."

Section 7 of Executive Order No. 8389, as amended, likewise authorized the Secretary of the Treasury, in accordance with the authority granted by Section 5(b), supra, to prescribe from time to time regulations to carry out the purposes of the Executive Order. General Ruling 6A, issued March 13, 1942, provided that the receiving or holding in the United States of currency thereof brought into the United States should be subject to the provisions of General Rulings 5 and 6 in the same manner as if such currency were securities.

General Ruling 5 prohibited importing any securities into the United States, or holding the same therein, "except on condition that such securities * * * thereof be immediately delivered for examination to a Federal Reserve Bank as fiscal agent of the United States," which bank should hold such securities until the Treasury Department was satisfied as to whether any of the countries named in Executive Order No. 8389, as amended, or any national thereof, had any interest in such securities. Customs officers were instructed by General Ruling 5 to deliver such securities to a Federal Reserve Bank, and any articles arriving from any foreign country, which in the opinion of such customs officers contained such securities, were to be subjected to customs inspection and, if any article opened by an addressee or his agent in the presence of a customs officer, be found to contain such securities, such securities were to be surrendered forthwith to such customs officer for delivery to a Federal Reserve Bank. General Ruling 6 provided that Federal Reserve Banks should release securities when the Treasury Department became satisfied that no blocked country or national thereof had any interest in such securities.

It is evident from the foregoing that the statements made to the customs officials were in a "matter within the jurisdiction" of a "department or agency of the United States," and that General Ruling 6A was authorized by Executive Order No. 8389 and within the delegated authority of Section 5(b) of the Trading with the Enemy Act of October 6, 1914, 40 Stat. 415, as amended, both of which covered the importation of United States currency.

■ The further point is made that evidence that the defendant was using a trunk with a false compartment was improperly introduced. No objection was made until a portion of the trunk itself was offered in evidence. But in any event the evidence would seem to have been competent as baring on the general intent of the defendant to deceive the government.

For the foregoing reasons the judgment is affirmed.