## UNITED STATES v. MEYER.
### No. 195.

Circuit Court of Appeals, Second Circuit.

Feb. 3, 1944.

Edward A. Alexander, of New York City, for defendant-appellant.

Thomas K. Fisher, Asst. U. S. Atty., of New York City (James B. M. McNally, U. S. Atty., of New York City, and Edward J. Ennis, Director, Alien Enemy Control Unit, Department of Justice, of Washington, D.C., on the brief), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

By Executive Order 9066, promulgated February 19, 1942, President Roosevelt, as President of the United States and Commander-in-Chief of the Army and Navy, reciting that the successful prosecution of the war required every possible protection against espionage and sabotage to national-defense material, premises, and utilities, authorized and directed military commanders to prescribe military areas from which any person might be excluded, when such action should be deemed necessary or de-

654

sirable, and with respect to which the right of any person to remain therein should be subject to such restrictions and orders as the designated military commanders might impose. 7 Fed.Reg. 1407. This grant of authority was in effect ratified by Congress on March 21, 1942, by the passing of 18 U.S.C.A. § 97a, which makes it a misdemeanor for any person knowingly to "enter, remain in, leave, or commit any act in any military area" prescribed by the military, under authority of an Executive Order of the President, contrary to restrictions applicable in such area. See Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774. Pursuant to the authority granted in Executive Order 9066, Lieutenant General Drum, military commander of the Eastern Defense Command, issued on May 16, 1942, Public Proclamation No. 1, 7 Fed.Reg. 3830, establishing the Eastern Military Area. Public Proclamation No. 2, issued by General Drum on September 7, 1942, 7 Fed. Reg. 7335, recited that military necessity required the promulgation of certain restrictions within the Eastern Military Area, and declared that "any person whose presence in the Eastern Military Area * * * is deemed dangerous to the national defense by the Commanding General * * * will be ordered excluded from the Military Area." Thereafter, General Drum issued a series of rules and regulations prescribing standard operating procedure for exclusion proceedings and constituting a board of officers to make recommendations in exclusion cases.

On February 22, 1943, the Exclusion Board was ordered to conduct a hearing at which defendant, who was stated to be under consideration for exclusion from the Area or a part thereof, was to be given an opportunity to appear and present evidence. Defendant appeared before the Board on February 27, 1943, and March 23, 1943. He was notified—first in writing in advance of the hearing and then twice orally at hearing—that he was under no compulsion to attend these hearings and could decline to answer any question asked him thereat; that he was permitted to say anything he wished, to introduce witnesses and present evidence on his behalf, and to have an adviser present; but that the adviser could not examine or cross-examine witnesses or object to questions. During the course of the examination of March 23, 1943, questions were asked defendant concerning his relationships with on Frederick Duquesne, who had been convicted in December, 1941, of conspiring to commit espionage against the United States. He answered that he had "once" and "just once" met Duquesne and that he had never had any correspondence with him.

As a result of these statements, defendant was indicted on two counts of making a false and fraudulent statement in a matter "within the jurisdiction of any department or agency of the United States," in violation of 18 U.S.C.A. § 80. The first count named his statement that he had only once met Duquesne, while the second dealt with his statement that he never had any correspondence with Duquesne. The jury brought in a verdict of guilty on both counts, and the court sentenced him to imprisonment. At the trial it appeared that Duquesne had visited defendant's office in New York City two or three times a week during July and August, 1940, and that they had had numerous conversations during that time. One government witness, who "didn't want to come to testify against" defendant, stated that in 1941 he had been introduced to Duquesne by someone he was "inclined to think" was defendant. From January 20 to February 6, 1941, Duquesne entered the building in which defendant's office was located at least six times, and on January 29, 1941, defendant and Duquesne left the building together. There was also produced a letter in defendant's handwriting on his office stationery, but with his telephone numbers and home address written in, which was found among Duquesne's personal effects. It was addressed to "Dear Fritz" and was signed "Bill."

There was, therefore, no question of the sufficiency of the evidence to sustain the conviction if a crime was legally charged. Defendant does not contend, and, indeed, could not very well do so in the light of Hirabayashi v. United States, supra, that Executive Order 9066 and 18 U.S.C.A. § 97a are void on their faces and patently unconstitutional. He does assert, however, that 18 U.S.C.A. § 80 is not applicable because its terms do not fit his case, in that the military is not a "department or agency of the United States" and the statements here were oral, and because the Exclusion Board was not a validly constituted tribunal, as neither the Executive nor the Military Commander

could empower a board to exclude citizens from an area not subjected to martial law, citing Schueller v. Drum, D. C. E. D. Pa., 51 F.Supp. 383. Cf. Ebel v. Drum, D.C. Mass., 52 F.Supp. 189.

Section 80 is divided into two clauses, of which the first condemns the making of a false claim against the Government of the United States to be presented to "any person or officer in the civil, military, or naval service" or to a government department or corporation, while the second, as finally amended in 1938, prohibits broadly the making of "any false or fraudulent statements or misrepresentations * * * in any matter within the jurisdiction of any department or agency of the United States." See United States v. Zavala, 2 Cir., 139 F.2d 830, recently decided by us, quoting the statute. Defendant stresses the fact that the first clause specifically mentions the military service, while the second does not. But it cannot be said that for this reason Congress did not intend to include the military within the definition in the second clause of "any department or agency of the United States." The Army and the Navy are certainly departments of the United States, and the omission to enumerate them specifically hardly indicates more than that Congress, like the rest of us, did not then think much about the possibility of another war. Any other construction of the section frustrates the all-inclusive nature of its wording. United States v. Goldsmith, 2 Cir., 108 F. 2d 917, 919, certiorari denied 309 U.S. 678, 60 S.Ct. 715, 84 L.Ed. 1022.

It is unnecessary for us to consider whether or not the Exclusion Board was in fact a validly constituted tribunal, as we think defendant was not in a position to raise the question in this proceeding. The courts have consistently held that the unconstitutionality of the operation or proceeding in relation to which a deception was practised is not a defense in a prosecution for such deception. As long as a department or agency has colorable authority to do what it is doing, the constitutionality of the statute or order granting the authority in the first place is immaterial. United States v. Kapp, 302 U.S. 214, 58 S. Ct. 182, 82 L.Ed. 205; Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607; Carter v. Texas, 305 U.S. 557, 59 S.Ct. 71, 83 L.Ed. 351; Boehm v. United States, 8 Cir., 123 F.2d 791, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200, rehearing denied 315 U.S. 828, 62 S.Ct. 794, 86 L.Ed. 1223. And here the combination of Executive Order 9066, Public Proclamations Nos. 1 and 2, and the rules for exclusion proceedings surely vests the Exclusion Board with ample apparent authority. See Ebel v. Drum, supra, 52 F. Supp. at page 195. In the Kapp case, supra, defendants were indicted under the first clause of § 80 for presenting a false claim to the Agricultural Adjustment Administration. The defense was that the Agricultural Adjustment Act had already been declared unconstitutional. Nevertheless, the Supreme Court upheld the conviction, saying: "It is cheating the Government at which the statute aims and Congress was entitled to protect the government against those who would swindle it regardless of constitutional authority as to the operations that the government is conducting." 302 U.S. at page 218, 58 S. Ct. at page 184, 82 L.Ed. 205. That this principle does not apply solely to cases where the deceit is practised in an attempt to gain monetary advantage is seen from Kay v. United States, supra, where the same doctrine was advanced as to simple false statements made to the Home Owners' Loan Corporation with no thought of immediate monetary gain.

Defendant's contention that the second clause of § 80 was intended only to include written statements is foreclosed by our recent decision in United States v. Zavala, supra, where we concluded "that Section 80 covers * * * the use of any false statement, whether oral or written, as to any matter within the jurisdiction of any department or agency of the United States." Nor can § 97a be considered, as defendant contends, to overrule by implication the pertinent provisions of § 80. The former does not mention false statements, and if § 80 were to be considered repealed thereby, there would remain no legislation to condemn acts of this sort. Congress cannot be presumed to have intended such an eventuality when it passed § 97a, especially since repeal by implication is not favored. Posadas v. National City Bank of New York, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351.

Other objections raised by defendant are of a minor nature. The customary complaint against the sufficiency of the indictment is even weaker here than usual, for the indictment more than adequately charges the crime and apprises

656

defendant of the charges against him. United States v. Goldsmith, supra, 108 F.2d at pages 920, 921; Zuziak v. United States, 9 Cir., 119 F.2d 140; 18 U.S.C.A. § 556. And, the indictment being thus sufficient, there was no abuse of discretion in denying defendant's request for a bill of particulars. Horowitz v. United States, 2 Cir., 262 F. 48, dismissed 254 U.S. 616, 41 S.Ct. 148, 65 L.Ed. 440. Refusal of the court to charge the jury that defendant must have been given an opportunity to correct his testimony if he so chose was justified by United States v. Norris, 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808, where such a charge was held unnecessary in a prosecution for perjury. Finally, the admission of the statement made by defendant to the United States Attorney before his arrest was no violation of the rule of exclusion announced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599. That rule applies only to statements made after arrest. United States v. Grote, 2 Cir., 140 F.2d 413, decided herewith.

Affirmed.