**UNITED STATES v. HEINE.**

**No. 309.**

Circuit Court of Appeals, Second Circuit.

April 27, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1578.

Robert L. Bobrick, of New York City (Boochever, Cameron, Ryan & Bobrick, of New York City, on the brief), for defendant-appellant.

Robert M. Hitchcock, Sp. Asst. to Atty. Gen. (T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In an application for a "certificate of identification" required of all alien enemies by Presidential Proclamation, Jan. 14, 1942, 3 CFR, Cum.Supp., Proc. 2537, under 50 U.S.C.A. § 21 et seq., and procured in accordance with detailed regulations of the Attorney General, Jan. 22, 1942, 28 CFR, Cum.Supp., 30.51-30.63, defendant answered "None" to the question, "Name the clubs, organizations, and societies of which you have been a member or with which you have been affiliated at any time during the past 5 years." He now appeals from his conviction of violation of 18 U.S.C.A. § 80 on proof of his membership in a local branch of the Nationalsozialistische Deutsche Arbeiterpartei (National Socialist German Workers Party), commonly known as the Nazi Party.

At the trial the prosecution introduced evidence that defendant's name appeared on a so-called list "of those who have applied for Passports," which, according to Illian, a stenographer at the German Consulate in New York in charge of collecting dues for the local branch of the Nazi Party, was in reality a list of the members of that organization, prepared from files and folders shortly before these disappeared from Party Headquarters in May, 1940. Defendant's name also appeared on a par-tially burnt list of members in arrears in payment of dues, with definite indications that his delinquency had been removed and his arrears paid in February, 1940. Included in the evidence were also two of defendant's letters addressed to a director of his employer, at Bremen, Germany, in which he indicated his Party membership. In one of these he stated point blank: "As a Party member I am not permitted to become an American citizen."

So persuasive does this proof seem to us that we cannot take seriously defendant's contention of lack of evidence sufficient to sustain the jury's verdict. Defendant asserts, however, that 18 U.S.C.A. § 80 is not applicable because the Presidential Proclamation and the regulations pursuant thereto, particularly § 13(a), 28 CFR, Cum.Supp., 30.63(a), prescribe their own penalty for failure to comply with the regulations, namely, apprehension, detention, and internment for the duration of the war. But that penalty is not specifically designed to cover falsification of an application. It covers the obvious omission to apply for or procure a certificate of identification. The purpose of the procedure requiring aliens to obtain certificates of identification and to answer the specific question on the application was to enable the authorities to ascertain in what cases apprehension, restraint, and removal should be exercised in accordance with 50 U.S. C.A. § 21, so that they would not be compelled to intern all enemy aliens. Defendant's very purpose in lying about his Nazi Party membership was to escape probable internment. Punishment for such falsification should be something beyond that which would have attended a truthful response, and the statute here, as it has been uniformly construed, accomplishes that very purpose. It is applicable to any person who "shall knowingly and willfully * * * make * * * any false * * * certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C.A. § 80. Thus it prescribes an over-all penalty for falsification, no matter what other penalties the statutes or regulations in connection with which the falsification occurs may dictate. There can be no doubt that defendant's falsification comes within its purview. United States v. Meyer, 2 Cir.,

140 F.2d 652; United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598.[1]

■ ■ Defendant assigns error in the action of the court in reading as part of its charge from the statute before it was amended in 1934. It is true that the court did read a portion of the statute in the form in which it stood prior to amendment. But no exception was taken to the charge. Moreover, the then statute penalized falsification only if undertaken "for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States." The removal of this limitation was the only change effected by the later amendment. The reading of the earlier version, therefore, if it influenced the jury at all, must have done so favorably to defendant. The court was not required to read the statute at all. And the remainder of its charge properly instructed the jury as to the offense with which defendant was charged. The inadvertent reading complained of was clearly harmless and does not call for reversal. Douchan v. United States, 6 Cir., 136 F.2d 144, certiorari denied 319 U.S. 773, 63 S.Ct. 1439, 87 L.Ed. 1721; United States v. J. Greenbaum & Sons, 2 Cir., 123 F.2d 770. See also Burns v. United States, 274 U.S. 328, 331, 332, 47 S.Ct. 650, 71 L.Ed. 1077.

■ ■ Other objections raised by defendant are inconsequential. Those to the remainder of the charge are totally without foundation, for the trial judge was most circumspect in presenting all the issues and warning the jury against taking matters for granted. Evidence consisting of Nazi Party forms, cards, invitations, dues receipts, membership books, which were identified by Illian, was properly admitted.

In order to prove that defendant was a member of the Nazi Party in the United States, the prosecution clearly had to establish the background of its existence and mode of operation as a political organization in this country. Likewise, there was no error in admitting .items taken from defendant's home, such as Nazi literature, pins for making contributions "to the Winter Relief or some other charity in which the Nazi Party was interested," and the like.· These went to establish the background from which defendant's knowledge and willfulness might better be judged. United States v. Molzahn, 2 Cir., 135 F.2d 92, 97, certiorari denied Molzahn v. United States, 319 U.S. 774, 63 S.Ct. 1440, 87 L.Ed. 1721; United States v. Cramer, 2 Cir., 137 F.2d 888, 897, reversed on other grounds Cramer v. United States, 65 S.Ct. 918; United States v. Keegan, 2 Cir., 141 F.2d 248, reversed on other grounds Keegan v. United States, 65 S.Ct. 1203; United States v. Compagna, 2 Cir., 146 F.2d 524, 530, certiorai denied Compagna v. United States, 65 S.Ct. 912. See also United States v. Pelley, 7 Cir., 132 F.2d 170, 181, certiorari denied Pelley v. United States, 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1135; United States v. Gordon, 7 Cir., 138 F.2d 174, certiorari denied Gordon v. United States, 320 U.S. 798, 64 S.Ct. 266, 88 L.Ed. 481; Butler v. United States, 7 Cir., 138 F.2d 977, and cases cited 979.

■ Nor does the record support the claim that this evidence was taken from defendant's home without consent or proper warrant. It shows on the contrary that his wife did at best resent the search, without at any time withholding her consent. Reszutek v. United States, 2 Cir., 147 F.2d 142, and cases cited. Her testimony was

---

[1] Defendant urges further—quite unimpressively, in our judgment—that the regulations refer only to political parties joined abroad or at least that he could so think (even though his testimony was a complete denial of Nazi membership). He stresses that portion of the regulations, § 6(n) (14), 28 CFR, Cum. Supp., 30.56(n) (14), which, after requiring the listing in the application of "the clubs, organizations, or societies" with which the applicant has been affiliated "either in the United States or abroad" during the preceding five years, specifically states, "If the applicant spent any part of said 5-year period outside the United States, he shall include a statement of his foreign political party or national organization affiliation during such portion of said 5-year period as he spent outside the United States" to support an interpretation pointing to political affiliation only during the period spent outside the United States. Obviously, however, the last sentence is merely additional to the remainder of the regulation, which definitely requires the statement of his affiliations while in the United States. He further contends that the phrase "clubs, organizations, or societies" does not include the more specifically mentioned foreign political party of the regulations. This also seems too restricted a reading—one in fact which would hardly have occurred to an applicant with nothing to conceal.

489

also that the federal agent said he was authorized by an executive search warrant in case she refused consent. The use of such a warrant is justifiable to search for property unlawfully held by an alien enemy. 50 U.S.C.A. §§ 21-24; Presidential Proclamations, Dec. 7, 1941, 3 CFR, Cum. Supp., Proc. 2525, par. (5), Dec. 8, 1941, 3 ibid., Proc. 2526; Lockington v. Smith, C.C.Pa., Fed.Cas.No.8,448. Defendant makes the further contention that the receipt of some of the other exhibits was improper because prohibited by Article XX of a treaty made December 8, 1923, between Germany and the United States, 44 Stat. 2150, providing that consular offices "shall under no circumstances be subjected to invasion." How far this provision would render evidence inadmissible in a criminal proceeding against an individual need not be considered, for there is nothing in the record to show that the exhibits were procured through the invasion of a German consular office.

Affirmed.