### UNITED STATES v. ADERMAN.

No. 10430.

United States Court of Appeals
Seventh Circuit.

Oct. 23, 1951.

William B. Rubin, Milwaukee, Wis., for appellant.

Timothy T. Cronin, U. S. Atty., Ellis J. Hughes, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before MAJOR, Chief Judge, and KERNER and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

Appellant and three others were charged by indictment in two counts with offenses under sections 88 and 80 of Title 18 U.S.C. (1946 Ed.), now 18 U.S.C.A. § 371 and §§ 287 and 1001. Jury trial was waived. The court dismissed one defendant at the close of the Government's case and, at the close of all the evidence, found the other three defendants guilty as charged in both counts. It imposed a fine of $5,000 on the first

count upon appellant, and suspended sentence and judgment on the second count, placing him on probation for a period of two years. From this judgment the appeal is prosecuted. The court suspended sentence and judgment on the other two defendants, placing them on probation for eighteen months. They did not join in the appeal.

The first count of the indictment charged a conspiracy to cause the North Avenue Federal Savings and Loan Association of Milwaukee (hereafter referred to as the Lender) to make and use a false certificate, which certificate the defendants knew contained fictitious statements and entries, in a matter within the jurisdiction of the Veterans' Administration, an agency of the United States, for the purpose of inducing the VA to guarantee a loan to one John Grunert, Jr., a veteran eligible for such loan under the provisions of the Servicemen's Readjustment Act of 1944. The certificate involved was alleged to be false in that it represented that a certain piece of property was being sold to Grunert for a total cost of $9,150, which price "for such property or for the cost of construction, repairs, alterations or improvements, does not exceed the reasonable value thereof as determined by proper appraisal dated October 30, 1947, made by Geo. J. Dooley, an appraiser designated by the Administration"; whereas in fact all the defendants knew that the total price to be paid by the veteran was $10,195, the overpayment being by the device of obtaining from the veteran a chattel mortgage as if on personal property upon certain items a part of the home such as the kitchen sink and cabinets and the furnace, securing a promissory note for the additional charges which the veteran agreed to pay, while the fact of this additional side payment was concealed from the Lender.

The second count charged the commission by the same defendants of the substantive offense, causing the false certificate described in the first count to be made and used by the Lender, knowing that it contained fictitious statements and entries, in a matter within the jurisdiction of the VA, an agency of the United States, for the purpose of inducing the VA to guarantee a loan to Grunert.

While the record in this case discloses considerable controversy over many of the details of the transaction here involved, there appears to be no dispute as to the essential facts, and the only question so far as the evidence is concerned is whether it supports the court's finding of guilt.

The four parties named in the indictment were appellant, an attorney and real estate dealer who throughout this transaction was acting only in his latter capacity, Mr. and Mrs. Pritzkow who owned a home they wished to sell, Attorney Louis Potter, the father of Mrs. Pritzkow, who represented the sellers—it was he who was dismissed at the close of the Government's case.

In July 1947, Mrs. Pritzkow called appellant's real estate office in response to his advertisement and listed her home for sale at $10,500. An agent of appellant obtained a prospective purchaser, the veteran, Grunert, and he signed a tentative offer to purchase for that amount, subject to GI financing. However, because the home had been purchased by Pritzkow, likewise a veteran, on a combined FHA-GI financing plan, it was necessary to have the sale price approved by the FHA, and, accordingly, written permission was obtained from that agency to sell the place at $9,710 plus a 5% commission to the broker, if any, for a total of $10,195. At Grunert's request for GI financing, appellant, who had previous experience in handling property under GI financing, requested Miss Clark, assistant secretary of the Lender, to have a GI appraisal made in accordance with the provisions of the Servicemen's Readjustment Act, 38 U.S.C.A. § 694a. Such an appraisal was made and sent by the appraiser designated by the VA to Miss Clark who notified appellant that the appraisal value was $9,-150. This appraisal referred to the fact that the property was equipped with gas heat, modern kitchen equipment and "complete storms." However, appellant stated that he did not see it or know that these items had been considered by the appraiser.

After notification by Miss Clark of the amount of the appraisal, appellant told Gru-

nert of it, and stated that that amount, $9,150, was the top price he could pay for the house under GI financing. However, he told him "between buyer and seller, in my opinion, that they could pay a sum agreed upon between them for personal property." Grunert then signed a new offer to buy the real estate for $9,150, subject to GI financing, and a separate offer to buy venetian blinds and "such other personal property to be left by the seller * * * at a price agreeable to both seller and buyer, and to give security for same as requested, and to pay therefor the sum of Twenty-five Dollars a month to include interest at the rate of 4% per annum." Both offers to purchase real estate, signed by Grunert on forms furnished by appellant, contained the following: "Included in the purchase are such of the following items as may now be on the premises, which will be delivered free and clear of encumbrance: screen doors and windows; storm doors and windows; * * * window shades, curtain rods and venetian blinds; * * * gas furnace."

Subsequently, at an evening meeting of all the parties in appellant's office, various papers were signed. These included a deed to the real property and a bill of sale signed by the Pritzkows to "the following described personal property now on the premises at * * *:

13 Venetian Blinds,

8 Screens,

2 Storm Doors, 14 Storm windows and Sash,

5 Kitchen Cabinets and

1 Kitchen Sink and cabinets, and

1 Gas unit."

Grunert signed two notes for $1,045 each, one secured by a chattel mortgage on the items listed in the bill of sale, and the second secured by a second real estate mortgage. This $1,045 represented the difference between $9,150, the appraised value fixed by the VA, and $10,195, the sale price permitted by the FHA, including the 5% broker's fee. The following day appellant, the Grunerts, and Mrs. Pritzkow met at the office of the Lender to close the loan. At that time Grunert signed the formal application for the GI loan showing the "Purchase price or cost $9,150," and also a form then otherwise blank, the Home Loan Report, later completed and sent by the Lender to the VA, which contains the certificate described in the indictment. Miss Clark testified that she asked at that time if the sales price were $9,150, and checked the sales agreement and revenue stamps on the deed, relying on this data for the certification to the VA that the price paid did not exceed the reasonable value of the property as determined by VA appraisal. The Grunerts signed a mortgage for a loan of $8,150, having previously made two payments of $100 and $900 to appellant on the purchase price. Appellant retained $485.50 for his commission. Mrs. Pritzkow received two checks, one from appellant and the other from Miss Clark, covering the balance shown due by a closing statement theretofore prepared. Mrs. Grunert testified that during the course of this gathering at the Lender's, in response to an inquiry of her husband to Mrs. Pritzkow about payments on the chattel mortgage, the latter said "Schuh, they are not supposed to know anything about that here." Mrs. Pritzkow denied this conversation.

■ It is clear from the record in this case that the parties engaged in a plan to evade the requirements of the Servicemen's Readjustment Act, 38 U.S.C.A. § 693 et seq. and that as a necessary part of that plan they caused the making of a false and fraudulent certificate for use in a matter within the jurisdiction of an agency of the United States. Appellant had had previous experience with deals financed under it and knew that the loans would only be guaranteed if the total purchase price did not exceed the appraised value. It was he who suggested the plan of a separate purchase of personal property, the items of which in fact had been included in both of Grunert's written offers to purchase. His commission of $485.50 was computed on the basis of the $9,710, the sales price permitted by the FHA which was in excess of the $9,150 appraised by the VA.

■ Appellant contends that the action was wrongly prosecuted under the False Claims Act and that the offense, if any,

should have been prosecuted under 38 U.S.C.A. § 715 which imposes penalties for making or conspiring to make false statements concerning claims arising under the Servicemen's Readjustment Act. He relies on two cases, Young v. United States, 9 Cir., 178 F.2d 78, and Karrell v. United States, 9 Cir., 181 F.2d 981, holding that transactions somewhat similar to the one here involved were properly prosecuted under that Act. However, a reading of § 715 makes it clear that the penalties provided by it are not exclusive but are to be imposed "in addition to any and all other penalties imposed by law * * *." Hence the offense could properly be charged under either statute. United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; United States v. Heine, 2 Cir., 149 F.2d 485; Heald v. United States, 10 Cir., 175 F.2d 878.

■■ Appellant further contends that the conspiracy count is fatally defective in that "it sets forth an agreement to 'cause a false certificate' knowingly and willfully, with knowledge that the certificate contains 'fictitious statements and entries' without stating in what respect the certificate is false; without stating what knowledge the defendant had that the certificate was false and without stating what knowledge the defendant had that the certificate contained false or fictitious statements or entries; instead Count I charges that the offense of causing a false certificate was by agreement perpetrated through another offense, to-wit: the concealing of a material fact by a trick, scheme or device." We find no merit in this contention. "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619. We think the indictment here sufficiently measures up to this test.

■■ Appellant contends that the conspiracy charge is further defective in that it is not supported by the overt acts which we set forth, in abbreviated form, in the margin,[1] and none of those overt acts connects appellant with the conspiracy charged. Appellant's argument overlooks the rule that the overt acts need not be in themselves criminal, and still less need they constitute the crime that is the object of the conspiracy, nor need it appear that all the conspirators joined in them or in any one of them. See United States v. Rabinowich, 238 U.S. 78, 86, 35 S.Ct. 682, 59 L.Ed. 1211. We think the acts here set forth were committed in furtherance of the general scheme to cause the making of a false certificate in order to induce the VA to guarantee the loan, hence that they support the conspiracy charge against appellant.

1. On or about November 4, 1947, the defendant Aderman demanded and received from said Grunert the sum of $100 as earnest money upon an offer to purchase the property above described for the sum of $9,150, the said Aderman signing a receipt therefor.

Aderman demanded and received from Grunert the sum of $900 as an additional down payment upon said offer by Grunert to purchase said home for the sum of $9,150, the said Aderman signing a receipt therefor.

The Pritzkows signed a document in writing accepting the offer of Grunert to purchase said home for the sum of $9,150.

The Pritzkows accepted in writing the offer of Grunert to purchase the "venetian blinds, screens, storm doors, sash, kitchen cabinets, gas unit," situate in the home being purchased, for the sum of $1,045, and to give as security a second mortgage on the said real estate and a chattel mortgage on the items described.

The Pritzkows demanded and received from Grunert a promissory note in the amount of $1,045.

The Pritzkows executed a bill of sale to Grunert of items in said home as follows: (listing the items heretofore set forth), said bill of sale being signed by Aderman and Potter as witnesses and acknowledged by Aderman as a Notary Public.

The defendants demanded and received from Grunert a chattel mortgage upon said items, conditioned upon the payment by Grunert to said defendants Pritzkow of the sum of $1,045; said chattel mortgage being signed in writing and witnessed by Aderman and Potter.

Appellant contends that the second count is defective in that it joins two offenses, (1) the willful causing of a written false certificate with knowledge that it contained a fraudulent or fictitious statement or entry; and (2) the willful concealing of a material fact by trick, scheme or device. An inspection of the second count of the indictment discloses no such misjoinder. Nor do we find any merit in his contention that neither count properly informs him as to the specific offense with which he is charged.

Appellant asserts that he was entitled to rely on Wisconsin law that "intent and not attachment of fixtures to realty determines whether fixtures are personal property." This might be a good defense if only the buyer and seller of the property were involved and the buyer knowingly agreed to purchase fixtures as personal property. Appellant refers to the fact that "the Grunerts had full knowledge of all that he, Aderman, did and so supported Aderman upon the trial." But it must be remembered that the false certification here charged was to induce the VA to act, not the Grunerts, and it was the VA which was misled by it. Nor does the fact of the veteran's participation in the evasion of the Act established for his own benefit exonerate appellant. Cf. Todorow v. United States, 9 Cir., 173 F. 2d 439. Further bearing on his assertion of good faith, it must also be remembered that the plan originated with appellant who, according to his own testimony, first suggested the plan of a separate sale of personal property, the items of which had in fact been included in the offers to purchase real property, as a means of collecting the full amount agreed upon. The price fixed for the personalty bore no relation to the actual value of the items included but was arrived at solely by computation of the difference between the permissible price and that agreed upon between the parties. Appellant states that his commission was based only upon the price paid for the real estate, that he received no commission for the sale of the personal property, and that he gained nothing and had nothing to gain from the sale of the personal property. Here he misstates the facts. The record shows that he received $485.50 as his commission, 5% of the $9,710 permitted by the FHA but bearing no relation to the $9,150 certified to the VA as the total price of the real property. We think the District Court was amply justified in concluding from all the evidence that appellant did not act in good faith.

Judgment affirmed.