**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Eduardo MONTIELL,
Defendant-Appellant.**

**No. 375, Docket 75–1274.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1975.

Decided Nov. 26, 1975.

Murray Cutler, Brooklyn, N.Y., for defendant-appellant.

David S. Gould, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., E. D. N. Y., of counsel), for plaintiff-appellee.

Before MOORE, OAKES and VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

Eduardo Montiell appeals from a judgment of conviction entered on a jury verdict convicting him of both counts of an indictment charging (1) possessing cocaine with intent to sell it; and (2) conspiring with one Alvaro to distribute cocaine, both in violation of 21 U.S.C. § 841(a)(1). Appellant was sentenced to five years of imprisonment on each count to run concurrently plus five years on special parole. We affirm.

In this case guilt is not in issue. Appellant contests solely the search and seizure process by which certain evidentiary items were secured from his apartment and, as "plain error", the trial court's charge which stated that Montiell was "charged with conspiracy to possess cocaine with intent to distribute", (App. 159, 160) whereas the indictment, in fact, "charged conspiracy to distribute". To these errors is added an asserted failure to define all the elements of the crimes charged.

The facts as to the search and seizure were developed in a pre-trial hearing on a motion to suppress. An undercover agent arranged to buy a pound of cocaine from Montiell for between $13,000 and $14,000. He arrived at Montiell's apartment to consummate the purchase where he met Alvaro. There the agent used a "street" test to ascertain the quality of a substance, which smelled to him like cocaine, by melting a small quantity on tinfoil. After the test the agent rolled up the tinfoil and put it in an ashtray on the table. He then returned to his car to obtain the money.

When the agent with a second agent returned to the apartment, knocks on the door brought no response except the sound of the flushing of a toilet within the apartment. Announcing themselves as Federal Agents, they tried unsuccessfully to break down the door. Montiell eventually opened the door and was arrested by other agents who had arrived to help make the entry.

The first two agents, meanwhile, ran through the apartment looking for Alvaro who apparently had fled. They noticed the test tinfoil in the ashtray and seized it. They also took scrapings of white powder ringing the inside of the toilet bowl, which they had observed upon searching the bathroom for Alvaro. The scrapings, which proved to be cocaine, and traces of the substance which were found on the seized tinfoil, became the evidence sought to be suppressed.

Appellant claims that the seizure of the tinfoil and scrapings constituted an illegal search and seizure. The argument, assertedly based upon *Chimel v. California,* 395 U.S. 752, at 768, 89 S.Ct.

2034, 23 L.Ed.2d 685 (1969), that instead of "roaming" around the apartment the agents should have gone before a Magistrate and obtained a warrant, is quite preposterous. Exigent circumstances precluded such a course of action. While many agents may have been involved in this arrest, their duties were manifold and pressing. Searching for Alvaro, securing the apartment against the possible presence of other armed confederates (a shotgun was found in a closet), and keeping a watchful eye on Mrs. Montiell, who entered the apartment immediately after her husband had been arrested, all were required. Furthermore, the white powder on the toilet bowl would have been destroyed by just one inadvertent (or deliberate) flush, and since there was nothing connecting Mrs. Montiell with the narcotics transactions, an admonition to Mrs. Montiell that she not use the toilet while a warrant was being obtained might well have been *ultra vires* the agents' duties.

The discovery and seizure of the contested evidentiary items only resulted from their prompt attention to these pressing demands. Having heard the flushing from outside the door, their first reaction upon discovery of Alvaro's absence was to seek him in the bathroom. Once inside that room the substance on the toilet fell into plain view. The same is true of the tinfoil in the ashtray.

 It would be disingenuous to pretend that the agents' discovery of these items was entirely inadvertent. The agent himself had placed the tinfoil in the ashtray shortly before it was seized, and, considering their experience in these matters, they probably suspected that cocaine was being destroyed when they heard the flushing sounds through the locked apartment door. But the inadvertence requirement of *Coolidge v. New Hampshire,* 403 U.S. 443, at 469, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), does not invalidate the plain view seizures in this situation because the primary motivation for the entry into the apartment and its bathroom was to arrest the appellant and Alvaro. *United States v. Morell,* 524 F.2d 550, at 556 (2d Cir. 1975).[1] Thus, upon the facts and the law the search and seizure were proper and the evidentiary fruits, admissible.[2]

We turn now to appellant's second contention. Although the indictment charged Montiell with conspiracy to distribute, after the court read the indictment to the jury correctly, it inadvertently misstated the conspiracy count as charging conspiracy to possess with intent to distribute. Appellant argues that this was "plain error", relying on *United States v. Clark,* 475 F.2d 240 (2d Cir. 1973), which held in the context of additional erroneous instructions that the failure to adequately define each material element of the crime charged was plain error.

 It is axiomatic that a defendant is entitled to have the jury adequately instructed on each essential element of the crime for which he is charged. See e. g. *United States v. Howard,* 506 F.2d 1131, 1132–33 (2d Cir. 1974). No exception was taken to the charge, but if prejudicial error resulted from a material omission or misstatement, cognizance thereof can be taken by the reviewing court. However, aside from the trial

---

1. *Morell* also disposes of appellant's argument that the agents should have obtained a search warrant *before* the agent initially entered the apartment to consummate the narcotics transaction. They were entitled to wait until such time as events had proceeded to a point where the agents could be reasonably certain that the evidence would ultimately support a conviction. *Morell, id.*

2. Appellee also argues that the search is valid under *United States v. Pino,* 431 F.2d 1043 (2d Cir.), *cert. denied,* 402 U.S. 989, 91 S.Ct. 1675, 29 L.Ed.2d 154 (1971). Appellant responds that *Pino* was disapproved in *United States v. Mapp,* 476 F.2d 67 (2d Cir. 1973). But our view of the case renders it unnecessary to resolve this controversy. Thus, while we note that the element of "hot pursuit" present here but absent in *Mapp* distinguishes that case from this, we intimate no opinion whether appellant's argument is correct.

court's inadvertent slip, the charge was concise, coherent and clear. Prolix exposition on the meaning of "distribute" and "possession" was appropriately eschewed. They are virtually self-defining. Of greater importance are the two adverbs "intentionally" and "knowingly" so frequently found in criminal statutes. As to these elements of the crime the charge was most complete and apparently satisfied trial counsel because no different requests were forthcoming. The other remaining elements of the counts were satisfactorily treated, and in such circumstances we believe that the essential elements of the crimes charged were adequately placed before the jury.

Appellant also argues that the court's inadvertent misstatement was an implicit amendment which resulted in the appellant being convicted for a crime not charged in the indictment.[3] See *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

■ The court read the indictment to the jury verbatim. *Cf. United States v. Mendoza,* 473 F.2d 692, 694 (5th Cir. 1973). Each material element of the conspiracy was adequately defined. If the misstatements could be construed as amending anything, it could only be the abbreviated title of the crime used in the course of the instructions, much as if the court had erroneously referred to the wrong statute as the source of the charge. Such alteration is not plain error. *United States v. Massiah,* 307 F.2d 62, 70 (2d Cir.) *rev'd on other grounds,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Nor did appellant suffer harm thereby. Every element required for "conspiracy to distribute" is also an element of "conspiracy to possess with intent to distribute." "At most, the erroneous charge here imposed on the government the burden of proving an additional element of the offense." *United States v. Deutsch,* 451 F.2d 98, 113 (2d Cir.), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972). Thus, the error, if any, could only have been favorable to appellant. *Deutsch, id.,* citing *United States v. Heine,* 149 F.2d 485 (2d Cir.), *cert. denied,* 325 U.S. 885, 65 S.Ct. 1578, 89 L.Ed. 2000 (1945).

There is no doubt but that Montiell had possession of the cocaine. He was charged with and convicted of possession. Likewise there is no doubt but that he intended to distribute it when he closed the deal to sell to the agent. Thus, he had possession with intent to distribute. But the same operative facts—the same elements—were applicable to a conspiracy to distribute.

The essential fact elements of the crimes charged were adequately placed before the jury and accordingly we affirm the judgment.

---

**3.** The appellant does not argue, nor could he, that there was a variance in the pleadings and proof.

"An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment."
*Gaither v. United States,* 134 U.S.App.D.C. 154, 413 F.2d 1061, 1071 (1969) (emphasis in original).