**UNITED STATES of America**

v.

**Hugo LOPEZ, Juan Trujillo and Hernando Vasquez, Defendants.**

**No. 89 Cr. 478 (RPP).**

United States District Court,
S.D. New York.

Oct. 27, 1989.

Benito Romano, U.S. Atty., S.D.N.Y., New York City (Lawrence Byrne, Asst. U.S. Atty., of counsel), for U.S.

Leonard J. Levenson, New York City, for defendant Hugo Lopez.

The Legal Aid Soc., Federal Defender Services Unit, New York City by Ruth M. Chamberlin, for defendant Hernando Vasquez.

Culleton & Marinaccio, Bronx, N.Y. by Michael A. Marinaccio, for defendant Juan Trujillo.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendants Hugo Lopez ("Lopez"), Juan Trujillo ("Trujillo") and Hernando Vasquez ("Vasquez") were indicted for conspiring to distribute cocaine and for possessing cocaine with the intent to distribute it. The defendants have moved to suppress evidence obtained by the government in the course of arresting the defendants. Specifically, all three defendants move to suppress a one kilogram bag of cocaine seized at the time of the arrests, and Lopez and Vasquez move to suppress statements they made shortly thereafter.

## I. FACTS

This Court held an evidentiary hearing on September 11 and 12, 1989, and makes the following findings of fact based on the evidence presented at that hearing. Five witnesses testified: three Drug Enforcement Administration ("DEA") agents, a private investigator retained by defense counsel, and Maria Lopez, the mother of defendant Lopez.

On June 6, 1989, Lopez, Trujillo and a confidential DEA informant occupied Room 304 of the Chatwal Inn hotel at 55th Street and Broadway in New York City. On June 7 and 8, the defendants, their alleged coconspirator Juan Carlos [1], and the confidential informant met with undercover DEA Agent Oberti to negotiate a deal involving the sale of fifty kilograms of cocaine from the defendants and Juan Carlos, at the price of $18,250 per kilogram. It was agreed that Oberti would initially purchase a one kilogram sample, and later purchase the additional forty-nine kilograms. The sale was supposed to take place in Juan Carlos' room at the Marriott hotel.

As early as 7:30 a.m. on June 8, DEA agents had commenced surveillance at the Chatwal Inn. Oberti, who was acting in an undercover capacity along with DEA agent Grabowski, was periodically in touch with the surveillance team.

On June 8, 1989, Oberti and Grabowski had several meetings with Lopez and the confidential informant, at least two of which occurred in the lobby of the Days Inn Hotel on 57th Street between 9th and 10th Avenues in Manhattan. At these meetings, preliminary discussions for the contemplated sale of cocaine took place. The chain of events that led to the arrests began when Lopez and his girlfriend unexpectedly entered the lounge area behind the lobby of the Days Inn at approximately 6:00 p.m. At that time, Grabowski and several back-up and surveillance agents were seated in the lounge area.

Oberti, who was returning from the bathroom, was walking towards the lounge and saw Lopez walking out of the lounge and down the hall towards the lobby. He and Lopez had a conversation in which Lopez apologized for the delay in delivering the cocaine. Grabowski joined them and Lopez apologized again for having delayed the sale of the cocaine, and suggested that if the sale did not occur by 7:00 p.m., he would find an alternative source in New Jersey.

Lopez then left the Days Inn at approximately 6:30 p.m. and began walking towards the Chatwal Inn, followed by surveillance agents. Shortly after Lopez's departure, Oberti received a call on his beeper from the confidential informant. Oberti called the informant from a mobile telephone and was told that the single kilogram of cocaine had been delivered by Vasquez to Room 304 of the Chatwal Inn, and that he thought that Lopez was aware the delivery had been made.[2] The call was then somehow disconnected. Oberti and

---

1. Juan Carlos escaped arrest and apparently remains a fugitive.

2. Agent Oberti testified that the confidential informant had provided reliable information in the past.

Grabowski feared that Lopez had not told them of the delivery because he had surmised that they were policemen when he saw Grabowski with the other agents in the lounge area, and that Lopez was conning them during their previous conversation. Grabowski relayed this information and the presence of the cocaine in Room 304 by radio to the surveillance agents following Lopez. Oberti then reestablished communication with the informant, who now said he thought that Lopez did not know of the delivery. Oberti testified that, as he and Grabowski were relaying this change of information to the surveillance team, they heard Agent Woods report that Lopez had started running towards the Chatwal Inn. Special Agent Woods testified that the surveillance team only received the first transmission from Oberti.

Special Agent Woods was the Group Supervisor and was among the agents who followed Lopez from the Days Inn to the Chatwal Inn. She testified that, as he approached the Chatwal Inn, Lopez broke into a run.[3] As he ran, he looked around and looked behind him. Lopez stopped at a pay telephone outside the Chatwal Inn and, according to Woods, appeared to want to make a call. Finding the telephone occupied, Lopez ran into the Chatwal Inn. The surveillance agents, and in particular Agent Woods, the supervising agent, immediately decided that Lopez had either discovered that he was being followed or that Oberti and Grabowski were police officers. Those concerns prompted a fear that Lopez would destroy the contraband and/or warn the other suspects.

Without obtaining a search warrant, Group Supervisor Woods and approximately seven other agents followed Lopez into the Chatwal Inn, announced outside the

door of Room 304 that they were federal agents, and then used a ram to break open the door of the room. As they entered, the arresting agents saw Lopez throwing a package out the window. Meanwhile, agents Oberti and Grabowski had arrived outside the Chatwal Inn. They saw the package come out the window and land on the street below. It contained one kilogram of cocaine. Lopez, Trujillo and Vasquez were arrested inside Room 304. Also arrested in Room 304 was a woman, apparently Lopez's girlfriend.[4]

After making the arrests and reading each defendant the *Miranda* warnings, the defendants were transported to DEA headquarters where they were given their *Miranda* warnings again and signed forms waiving their rights. Lopez and Vasquez subsequently made damaging statements.

## II.  DISCUSSION

### A.  The One Kilogram of Cocaine

■ A warrantless entry into a home[5] to make a search, seizure or arrest is "presumptively unreasonable" under the fourth amendment to the United States Constitution. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *United States v. Cattouse,* 846 F.2d 144, 146 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 316, 102 L.Ed.2d 335 (1988). Exceptions to this requirement are jealously and carefully drawn. *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958); *United States v. Levy,* 731 F.2d 997, 1000 (2d Cir. 1984). Where such a warrantless intrusion is made, the burden is on the government to establish that an exception to the warrant requirement applies. *Welsh v. Wis-*

---

3.  Defendants point out, and Agents Woods and Oberti acknowledged on cross-examination, that the DEA–6 report, written by another agent, which described the investigation and arrests does not mention Lopez running to the Chatwal Inn. Defendants also note that the government, in its pre-hearing brief in opposition to the motions, did not reveal that Lopez ran into the Chatwal Inn.

4.  It is unclear from the testimony how Lopez's girlfriend travelled from the Days Inn to the

Chatwal Inn. Certain testimony suggests that she walked out of the Days Inn with Lopez, but Agent Woods testified she was not with Lopez as he made his way to the Chatwal Inn.

5.  A guest in a hotel room has a legitimate expectation of privacy in that room and is entitled to the same fourth amendment protection that extends to homes. *Stoner v. California,* 376 U.S. 483, 488, 84 S.Ct. 889, 892, 11 L.Ed.2d 856 (1964).

*consin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984); *United States v. Arboleda,* 633 F.2d 985, 989 (2d Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981).

The government argues that exigent circumstances justify the actions of the DEA in this case. Where police officers are confronted with exigent circumstances requiring the arrest of a person inside his home before an arrest warrant can be obtained, the arrest does not violate the fourth amendment. *Welsh v. Wisconsin, supra; United States v. Cattouse, supra; United States v. Crespo,* 834 F.2d 267, 270 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988).

If the agents were legally present in Room 304, then the seizure of the one kilogram package in plain view on the sidewalk was not the fruit of illegal police conduct and will not be suppressed. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). However, if the entry was improper, and there was a causal nexus between the unlawful conduct and the abandonment of the package, the package must be suppressed. *See e.g., United States v. Moskowitz,* 883 F.2d 1142 (2d Cir.1989) (dicta); *United States v. Arboleda, supra; United States v. Gilman,* 684 F.2d 616 (9th Cir.1982); *United States v. Beck,* 602 F.2d 726, 728 (5th Cir. 1979).

■ The arresting agents' subjective belief that an exigency existed is not determinative. Rather, the test for determining whether a warrantless entry was justified by the presence of exigent circumstances is an objective one. *United States v. Zabare,* 871 F.2d 282, 291 (2d Cir.1989). Thus, the issue is whether it was objectively reasonable on the basis of the facts confronting the arresting agents to conclude that exigent circumstances justifying a warrantless entry were present.

The "essential question is whether there was 'urgent need' that 'justif[ied]' the warrantless entry." *United States v. Crespo,* 834 F.2d at 270 (citations omitted). The Second Circuit has outlined an illustrative list of factors that may assist a Court in determining whether such "urgent need" exists:

> These include (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect "is reasonably believed to be armed"; (3) "a clear showing of probable cause * * * to believe that the suspect committed the crime"; (4) "strong reason to believe that the suspect is in the premises being entered"; (5) "a likelihood that the suspect will escape if not swiftly apprehended"; and (6) the peaceful circumstances of the entry.

*United States v. Cattouse,* 846 F.2d at 147 (citations omitted). "This list is 'illustrative, not exclusive,'" *id.* at 146, and additional factors, such as the possibility that evidence will be destroyed and that the suspect could signal other coconspirators about police activity, may be considered. *United States v. Crespo,* 834 F.2d at 271; *United States v. Campbell,* 581 F.2d 22, 26 (2d Cir.1978).

In this case, the suggested factors are not determinative. Several factors counsel in favor of a finding of exigent circumstances: the defendants were suspected of a serious offense; there was probable cause to arrest the defendants for conspiracy to distribute cocaine at the time of the entry; there was some likelihood that the defendants would escape, and a virtual certainty that the evidence would be destroyed and coconspirators notified, if the time were taken to obtain a warrant. The remaining factors do not suggest the existence of an exigency here: there is no evidence on the record that the defendants were considered violent or that the agents had particular reason to believe they were armed; and the entry was not peaceful.

Nonetheless, the government has carried its burden of establishing the lawfulness of the entry. The totality of the circumstances confronting the arresting agents in this case establish that the decision to enter Room 304 without a warrant was objectively reasonable. The arresting agents were faced with a situation where they knew that (1) one kilo of cocaine had been delivered to Room 304, (2) Lopez had made an

unexpected visit to the Days Inn, (3) Lopez had seen one of their undercover officers sitting with surveillance agents in the Days Inn lounge, (4) Lopez knew that a delivery of cocaine had been made to Room 304 or was imminent, (5) Lopez had broken into a run as he travelled between the Days Inn and the Chatwal Inn, (6) Lopez had looked about furtively as he ran, and (7) Lopez had attempted to make a telephone call outside the Chatwal Inn and then ran inside.

Presented with these circumstances, it was objectively reasonable for the agents to believe Lopez had discovered that he was being surveilled or that the men with whom he was negotiating a sale of drugs were police officers, or both, and he was hurriedly attempting to warn his coconspirators and destroy the evidence. Thus, exigent circumstances justifying the warrantless entry into Room 304 were present.

Defendants urge the Court to disbelieve the testimony of agents Woods and Oberti, pointing specifically to the omission from the DEA reports of any mention that Lopez ran towards the Chatwal Inn, and noting several other inconsistencies in the evidence presented by the government. The Court, however, finds the agents' testimony and version of the facts to be credible. Moreover, the defendants did not present a credible alternative version of the facts to rebut the government's evidence.

■ Defendants argue that this is a case where the agents could have obtained a warrant earlier in the day and that they created their own exigency by failing to do so. However, this case is not like *United States v. Segura,* 663 F.2d 411 (2d Cir. 1981), *aff'd,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). In that case the Second Circuit held that the government could not claim an exigency where agents had caused a commotion by unnecessarily dragging an arrested suspect to his apartment and knocking on the door. This case is more like *Cattouse,* which distinguished *Segura,* where the court found the agents could not have obtained a warrant earlier in the day, and even if they could have "their failure to do so at the first opportunity does not bar them from acting on an exigency that arises later." *Cattouse* at 147. *See also United States v. Zabare,* 871 F.2d at 290 (following *Cattouse* ).

In this case, the agents may not have been able to obtain either a search warrant or arrest warrants earlier in the day. As in *Cattouse,* the agents may not yet have known the names of the suspects, making it more difficult to obtain arrest warrants. Moreover, it is not clear that probable cause for the arrests of Trujillo and Vasquez had been established before the events of June 8 had taken place. In any event, agents are permitted to refrain from securing arrest warrants "until such time as events ha[ve] proceeded to a point where the agents could be reasonably certain that the evidence would ultimately support a conviction." *United States v. Montiell,* 526 F.2d 1008, 1010 n. 1 (2d Cir.1975) (citation omitted); *Cattouse,* 846 F.2d at 147.

Even if warrants could have been obtained earlier that day, the agents were not required to obtain warrants for the defendants' arrests at the first opportunity. Their intention was not to seize only one kilogram of cocaine and arrest only the present defendants; the plan was to recover all fifty kilograms and arrest Juan Carlos as well. The events as they unfolded, however, required them to arrest the defendants and seize the package or else risk coming up empty-handed.

Moreover, the agents cannot be faulted for failing to secure a search warrant for Room 304 of the Chatwal Inn earlier in the day. The sale of the cocaine was planned to take place at the Marriott Hotel, not the Chatwal Inn. The agents cannot be required to obtain search warrants for every possible location at which an emergency requiring the immediate arrest of the suspects may arise. The agents' conduct, therefore, considered in the totality of the circumstances, was reasonable.

The fact that Special Agent Woods testified that she was not prepared to let the $18,250 of buy money go into the hands of the defendants does not alter that conclusion. Even if her testimony is interpreted to mean the agents intended all along to arrest the defendants on June 8, it does not

follow that they were required to obtain arrest warrants. Undoubtedly, the plan was to make the arrests in a situation where a warrant was not required. It was planned that an undercover agent would be present, with the defendants' consent, wherever the cocaine was delivered. At that point, the agent would have been authorized to arrest, or signal the arrest of, those present in the room without arrest warrants. Again, then, it was reasonable for the agents to proceed as they did without warrants.

Defendants also argue that the agents could have secured the perimeter of the Chatwal Inn while they applied for arrest and search warrants. However, if the agents were correct that Lopez had discovered their surveillance or realized that Oberti and Grabowski were police officers, any additional time taken before entering the hotel room certainly would have resulted in the destruction of the evidence, making that option not feasible.

In conclusion, the one kilogram package of cocaine was recovered in plain view on the street below Room 304, immediately after it was thrown out the window of Room 304 by Lopez as the agents entered the room without a warrant. The government has carried its burden of showing exigent circumstances justifying the warrantless entry into Room 304 of the Chatwal Inn to arrest the defendants. Therefore, the seizure of the package was not a result of illegal conduct by the agents. Defendants' motions to suppress the one kilogram package of cocaine is denied.

B. The Statements

Defendants argue that if the arrests were results of an illegal entry into the hotel room, then the post-arrest statements are also the fruit of that illegal entry and must be suppressed. The Court's conclusion above that the entry was valid under the exigent circumstances exception to the warrant requirement disposes of that argument, and the motions to suppress the post-arrest statements are also denied.

## CONCLUSION

Accordingly, the defendants' motions to suppress the one kilogram package of cocaine and the post-arrest statements of Lopez and Vasquez are denied.

SO ORDERED.